694 P.2d 1301

Denny **CHANCLER, individually, and Denny Chancler Equipment Company, and Stevon Christensen, Plaintiffs-Appellants,**

v.

**AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, Defendant-Respondent.**

No. 14487.

Court of Appeals of Idaho.

Jan. 29, 1985.

Petition for Review Granted
March 26, 1985.

Ben Peterson, Baum & Peterson, Gary L. Cooper (argued), Racine, Olson, Nye & Cooper, L. Charles Johnson, Johnson & Olson, Chartered, Pocatello, for plaintiffs-appellants.

David H. Maguire, Maguire, Ward & Maguire, Pocatello, for defendant-respondent.

BURNETT, Judge.

We are asked to decide whether a liability insurance policy covers a claim for personal injury allegedly caused by a defective product. The district court held that no coverage exists. We affirm.

The material facts are undisputed. One of the appellants, Denny Chancler, operated a business engaged in selling heavy equipment. He sold a used crane to an enterprise where another appellant, Stevon Christensen, was employed. Before delivering the crane, Chancler modified it by adding a ten-foot extension to the boom. After the crane was delivered, the boom collapsed and Christensen was injured. Christensen sued Chancler, alleging that the crane was a "defective product" and that it was "the proximate cause" of his injuries. Chancler notified his liability insurer, respondent American Hardware Mutual Insurance Company, but the company denied coverage and refused to defend the suit. Chancler and Christensen then joined forces to bring this action against the company, seeking a declaratory judgment on the question of insurance coverage.

The insurance policy begins with a broad statement of coverage:

> The company will pay ... all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury or ... property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....

However, the policy then recites numerous exclusions. One such exclusion pertains to "bodily injury or property damage included within the completed operations hazard or the products hazard...." This twofold exclusion is the focus of the instant case.

The terms "completed operations hazard" and "products hazard" are explained in the "definitions" section of the policy. However, before turning to that section, we note that the two hazards are identified separately and set forth in the disjunctive. Coverage is excluded if a claim arises from either type of hazard. Consequently, we need not consider the meaning and scope of both hazards. We begin, and end, with the "products hazard."

"Products hazard" is defined in the policy as:

> [B]odily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from the premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others....

This language has found its way into standard insurance policies largely because the liability exposure of product manufacturers and sellers has grown in recent decades. The demise of the privity limitation upon parties who can be sued, and the advent of strict liability in tort, have extended liability exposure through the stream of commerce to the point of use. In contrast, during the nineteenth and early twentieth centuries, liability exposure was primarily limited to the premises, operations or transactions where the product was made and initially sold. When Judge Cardozo's famous decision in *McPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916), breached the wall of privity and presaged a brave new world of product liability, insurers found themselves exposed to greater risks than they originally had underwritten. Standard policies have been refined to segregate the traditional risks associated

with an insured's premises and operations from the burgeoning new risks encountered after the product was delivered to its purchaser. The choice of whether to insure against these new risks is made by an insured when he decides how much coverage he needs and how much he is willing to pay for it.

In this case, Chancler elected to buy a policy with the "products hazard" excluded. This standard exclusion encompasses all hazards arising from a product that causes bodily injury or property damage away from the insured's premises, after the product has been delivered to the purchaser. *See generally* 2 LONG, THE LAW OF LIABILITY INSURANCE § 11.-07A (1984). Although we sympathize with efforts by Christensen, the injured party, to find a source of compensation, we deem it clear that his claim falls within this exclusion. The injury arose from one of Chancler's products and it occurred after the product had been delivered to the purchaser.

Striving to avoid the unambiguous thrust of the exclusion, the appellants have urged us to treat Christensen's injury as a result not of a defective product but of inadequate safety information concerning the product. This, of course, is not how the injury was characterized by Christensen's complaint against Chancler. However, it is now asserted—and we will assume for the purpose of discussion—that Chancler failed to provide a "durable load rating chart" listing maximum weight loads for the modified crane. Appellants contend that furnishing such information would be a "service" and that failure to provide such a "service" falls outside the "products hazard" exclusion.

This argument has been well presented by able counsel, but we are unpersuaded. We believe it is conceptually unsound to dissociate a product from directions or information required for its safe use. Indeed, whether a product is defective may be determined by reference to such information, or to the lack of it. RESTATEMENT (SECOND) OF TORTS § 402A, comments h and j (1965). *See generally, e.g.,* 2B L. FRUMER & M. FRIEDMAN, PRODUCTS LIABILITY § 16A[4][f][vi] (1984). Moreover, virtually every product is limited in the scope of safe uses to which it may be put. Such a limitation affords an occasion, and in some circumstances a duty, to warn against unsafe uses. If an injury caused by a product were treated as arising not from the product itself but from a failure to provide information about the product, the "products hazard" exclusion would be rendered virtually meaningless. We decline to so emasculate this exclusion. An insurance policy, like any contract, must be read as a whole and each provision given effect according to its plain meaning. *E.g., Miller v. World Insurance Co.,* 76 Idaho 355, 283 P.2d 581 (1955).

We recognize, of course, that this type of exclusion would not apply if an injury were caused by a service distinguishable from the product. *See Friestad v. Travelers Indemnity Co.,* 260 Pa.Super. 178, 393 A.2d 1212 (Pa.Super.1978) (holding exclusion inapplicable to faulty installation of a furnace). But where, as here, the product allegedly has caused the injury, and the purported "service" consists only of furnishing information about the product and its limitations, the exclusion applies. *Inductotherm Corp. v. New Jersey Manufacturers Casualty Insurance Co.,* 83 N.J.Super. 464, 200 A.2d 358 (N.J.Super.Ct. Law Div.1964).

Accordingly, the judgment of the district court, declaring that no coverage exists, is affirmed. Costs to respondent. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.