712 P.2d 542

**Denny CHANCLER, individually, and Denny Chancler Equipment Company, and Stevon Christensen, Plaintiffs-Appellants,**

v.

**AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, Defendant-Respondent.**

**No. 15938.**

Supreme Court of Idaho.

Nov. 5, 1985.

Rehearing Denied Jan. 27, 1986.

Gary L. Cooper, Pocatello, for appellant Christensen.

L. Charles Johnson, Pocatello, for appellant Chancler.

David H. Maguire, Pocatello, for respondent.

BISTLINE, Justice.

## HISTORY

This is a declaratory judgment action in which plaintiffs-appellants, Stevon Christensen and Denny Chancler, have requested a judicial determination of insurance coverage provided by the defendant-respondent, American Hardware Mutual Insurance Co.

The facts of this case are undisputed. On May 1, 1980, Christensen suffered severe and permanently debilitating injuries when a crane sold by Chancler collapsed on him as he was operating it. The crane sold by Chancler was a used crane, and before selling it, Chancler had modified it by adding a ten-foot extension to the boom.

When Chancler sold and delivered the crane to the business firm that employed Christensen, no safety information of any sort listing the maximum weight loads for the modified crane was supplied. It was the modification that collapsed and injured Christensen when the load the crane was carrying exceeded its carrying capacity.

Christensen sued Chancler, alleging the crane was a "defective product." Chancler notified American Hardware of the suit, but the company denied coverage and refused to defend the suit. Chancler and Christensen then united to bring this declaratory action, seeking a judicial determination on the question of insurance coverage.

The district court found for American Hardware, holding that an applicable exclusion in the insurance policy at issue effectively denied coverage. Christensen and Chancler appealed, and the Court of Appeals affirmed the district court in *Chancler v. American Hardware Mutual Insurance Co.*, 107 Idaho 953, 694 P.2d 1301 (Ct.App.1985). A petition for review was filed, and on March 26, 1985, this Court granted the petition. We now reverse and remand to the district court.

### I.A.

The policy in question is complex, convoluted, and confusing. It begins by broadly declaring:

> The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
>
> Coverage A.   bodily injury or
>
> Coverage B.   property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damages, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

But what one giveth, one can taketh away, and in 17 lengthy exclusions much is taken away. Exclusion no. 16 (listed as "p")[1] states that the insurance coverage

---

1. Exclusion "p" is 80 lines of fine print below the general heading "Exclusions." It would require a doggedly determined customer of the most unusual sort who would ever discover exclusion "p" in the first place, and then continue on to ascertain what it is that it actually excludes.

    The California Supreme Court, in *Insurance Co. of North America v. Electronic Purification Co.*, 67 Cal.2d 679, 433 P.2d 174, 181, 63 Cal. Rptr. 382, 389 (1967), described the monumen-

does not include: "bodily injury or property damage included within the completed operations/hazard or the products hazard." The terms "completed operations hazard" and "products hazard" are defined on a different page of the policy as follows:

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

"products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but

---

tal task confronting anyone attempting to understand the type of insurance policy found in this case:

When confronted with products hazard clauses, many courts, troubled by the difficulty of ascertaining their meaning, have warned against interpreting them to deny the basic insurance contemplated by the insured. "In summary, the plaintiff gave the defendant coverage in a single, simple sentence easily understood by the common man in the market place. It attempted to take away a portion of this same coverage in paragraphs and language which even a lawyer, be he from Philadelphia or Bungy, would find it difficult to comprehend." (*Peerless Insurance Co. v. Clough*, supra, 105 N.H. 76, 193 A.2d 444, 449 [1963].) "The true meaning of the policy is difficult to determine. An examination of it involves a physical effort of no mean proportions. * * * If [the reader] is possessed of reasonable physical dexterity, coupled with average mental capacity, he may then attempt to integrate and harmonize the dubious meanings to be found in this not inconsiderable

package. A confused attempt to set forth an insuring agreement is later assailed by such a bewildering array of exclusions, definitions and conditions, that the result is confounding * * *." (*Ocean Accident & Guarantee Corp. v. Aconomy Erectors*, supra, 224 F.2d 242, 247 [1955]; *Maretti v. Midland National Insurance Co.*, supra, 41 Ill.App.2d 17, 190 N.E.2d 597, 602 [1963].)

This is not the first time this Court has had the unpleasant task of trying to understand the "products hazard" and "completed operations hazard" exclusions. Chief Justice Donaldson described the success of the Court's first attempt in *Parma Seed, Inc. v. General Insurance Co. of America*, 94 Idaho 658, 666, 496 P.2d 281, 289 [1972] (Donaldson, J., dissenting):

That the "Products and Complete Operations Exclusion" is susceptible to more than one interpretation is manifested by the very history of this case on appeal: it has been under consideration by this Court for more than two years; it has been argued three times; and one opinion previously issued by this Court has been vacated.

only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;

. . . .

The district court held, and the Court of Appeals agreed, that the "products hazard" component of exclusion "p" effectively denied coverage to Chancler for the harm suffered by Christensen. Essentially, the reasoning of the two courts is that what the "products hazard" exclusion attempts to exclude is coverage arising out of products liability claims, and that because Christensen's claim is, for all practical purposes, a products liability claim, there is no coverage. We disagree.

### B.

The Court of Appeals defined the scope of the "products hazard" exclusion far too broadly. Included within that definition, the Court of Appeals argues, are claims for failure to instruct or warn about the proper and improper use of the product in question. The Court of Appeals felt compelled to reach this result, arguing that to rule otherwise would render the exclusion "meaningless." We do not find this argument persuasive.

We find that the correct view of the "products hazard" exclusion, when we apply the proper rules of construction for insurance policies, which we set forth below, *see* part I.D. *infra*, is that it was *only* intended to avoid claims based in *strict products liability*. Furthermore, Idaho law is clear that the negligent rendering of a service involving repair or post-repair inspection of a product, which later causes an accident, provides a basis for a claim to be made in *negligence* and not strict products liability. *Steiner Corp. v. American Dist. Telegraph,* 106 Idaho 787, 789–90, 683 P.2d 435, 437–38 (1984); *Hoffman v. Simplot Aviation, Inc.,* 97 Idaho 32, 35–36, 539 P.2d 584, 587–88 (1975).[2] Accordingly, applying *Steiner* and *Hoffman,* we must determine if Christensen's claim of failure to warn can be viewed as one based in negligence. If it is, then the "products hazard" exclusion cannot be held to be an effective exclusion of coverage in this case.

### C.

The Court of Appeals held that Chancler's failure to provide information about the maximum weight loads for the modified crane is not a "negligent service" but an item of proof that the crane was a defective product. That is, what made the crane "defective," and, therefore, "unsafe" pursuant to strict products liability was the

**2.** Chief Justice Donaldson ably pointed out this distinction in his dissent in *Parma Seed, supra,* at 664–65, 496 P.2d at 287–88:

The majority answers the argument that this case is one involving liability for negligence and not products liability by quoting the following language from *Tidewater Associated Oil Co. v. Northwest Casualty Co.,* 264 F.2d 879 (9th Cir.1959):

"In practically every case in which injury or damage is caused by the handling or use of a product, or by a defective condition in such product, the occurrence causing the injury or damage can be traced to some pre-existing negligence. Indeed, were this not so the injured person would have no basis for a tort claim against the insured. Thus, if the allegation of pre-existing negligence were to be regarded as controlling, the result would be to emasculate the product liability exclusion." 264 F.2d at 882.

This reasoning, based upon the erroneous assumption that without some pre-existing neg-

ligence "the injured person would have no basis for a tort claim against the insured," is, in my opinion, fallacious. It completely ignores the existence of the doctrine of strict liability in tort. *A retailer may be held strictly liable even though no culpable act or omission can be attributed to him; proof of negligence or fault is not required. McGinnis v. Fidelity & Casualty Co. of N.Y.* [276 Cal.App.2d 15, 80 Cal.Rptr. 482 (1969) ], *supra;* Carmichael, Strict Liability in Tort—An Explosion in Products Liability Law, 20 Drake L.Rev. 528 (1971); Keeton, Products Liability—Liability Without Fault and the Requirement of a Defect, 41 Texas L.Rev. 855 (1963); CCH Products Liability Reports, § 4010 (1970). *Therefore, finding that coverage is not excluded where the seller's negligence causes injury would not "emasculate the product liability exclusion," for this exclusion would still exclude coverage of strict liability in tort in products liability cases.* (Emphasis added.)

failure of the product to be supplied with adequate information of its proper uses.

The Court did acknowledge that strict products liability theory does not include claims involving the rendition of negligent services "distinguishable" from the product. *Chancler, supra*, 107 Idaho at 955, 694 P.2d at 1303. Here, though, the Court of Appeals said that Christensen's claim was one in strict products liability, because the alleged negligent service—failing to warn about the crane's load capacities—was a service *not* "distinguishable" from the product.

■ We find that the Court of Appeals committed error when it entered into this semantical exercise. Strict products liability and negligent rendition of service are not mutually exclusive theories. *Davis v. Globe Machine Manufacturing Co., Inc.*, 102 Wash.2d 68, 684 P.2d 692, 696 (1984). That is, an injury may give rise to claims that can be made out either under principles of strict products liability or negligence, and failure to prove one theory does not preclude proving another theory. *Id.*

*Prosser and Keeton on the Law of Torts*, § 101, p. 708 (5th ed. 1984), points out that at least two separate, independent theories of recovery are available to plaintiffs who have suffered physical injury from a defective product. These two theories are negligence and strict liability. Numerous courts have reached this same conclusion. *See Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 661 P.2d 348 (1983); *Barry v. Don Hall Laboratories*, 56 Or.App. 518, 642 P.2d 685 (1982); *Shell Oil Co. v. Gutierrez*, 581 P.2d 271, 119 Ariz. 426 (App. 1978); *First National Bank in Albuquerque v. Nor-Am Agricultural Products, Inc.*, 88 N.M. 74, 537 P.2d 682 (App.1975), *cert. denied*, 88 N.M. 29, 536 P.2d 1085.

■ Thus, the Court of Appeals placed itself in a needless dilemma of determining whether Christensen's claim is one sounding in strict products liability or in negligence. Nothing precludes it from sounding in both theories. So long as the necessary proof is presented, Christensen may prevail on either claim. We agree with the Court of Appeals that American Hardware has excluded coverage for those cases based on a strict products liability theory. We hold, however, that it has not so excluded itself from mere negligent rendition of services, and because Christensen does have a claim grounded in negligence—a claim premised on Chancler's failure to warn—we hold that Chancler's "products hazard" exclusion does not deny coverage for this claim.

Our conclusion is the same reached in *Cooling v. United States Fidelity and Guaranty Co.*, 269 So.2d 294, 297–98 (La. App.1972), *cert. den.*, 272 So.2d 373 (La. 1973). In that case, the Louisiana Court of Appeals stated the following in response to the very same issue before us:

The parties intended that the exclusions would apply to coverage for injuries received as a result of the sale of defective products or as a result of negligence in positive representations or warranties. This construction is supported by the cases cited by U.S.F.&G. for the proposition that the exclusions apply to Cooling because his alleged negligence was a part of a sale of products. All but one of the cited cases are distinguished from the case at bar either on the basis of the presence of defects in the products sold or by tortious positive representations or warranties, neither of which is present in this case.

*The definitions of products hazard and completed operations hazard do not mention omissions or failure to warn when there is no affirmative duty [imposed by the insurer] to do so. The definitions of products hazard and completed operations hazard do include injuries arising out of representations or warranties. But the converse, the failure to represent is not included in these definitions. If the parties intended to limit the liability of the insurer by excluding coverage for omissions and failure to warn when there is no affirmative duty to warn, the insurer could have so provided.* (Emphasis added.)

We find this reasoning persuasive, especially in light of the rules of interpretation in relating to insurance policies, which we now address.

## D.

Idaho law governing the interpretation of insurance policies was set forth well by Justice Shepard in *Moss v. Mid-America Fire and Marine Ins. Co.,* 103 Idaho 298, 300, 647 P.2d 754, 756 (1982):

> This Court has long recognized that *insurance policies are contracts of adhesion, not subject to negotiation between the parties, and hence must be construed most strongly against the insurer. Abbie Uriguen Olds. Buick, Inc. v. United States Fire Ins. Co.,* 95 Idaho 501, 511 P.2d 783 (1973); *Stephens v. New Hampshire Ins. Co.,* 92 Idaho 537, 447 P.2d 14 (1968); *Scharbach v. Continental Cas. Co.,* 83 Idaho 589, 366 P.2d 826 (1961); *Rollefson v. Lutheran Brotherhood,* 64 Idaho 331, 132 P.2d 758 (1942). The provision at issue today is one which seeks to exclude the insurer's coverage. Such an exclusion must be strictly construed in favor of the insured. Hahn v. Alaska Title Guaranty Co.,* 557 P.2d 143 (Alaska, 1976); *Mission Ins. Co. v. Nethers,* 119 Ariz. 405, 581 P.2d 250 (Ariz.App.1978); *State Farm Mutual Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973); *Northwestern Nat. Cas. Co. v. Phalen,* [182 Mont. 448], 597 P.2d 720 (Mont.1979); *Conner v. Transamerica Ins. Co.,* 496 P.2d 770 (Okl. 1972); *McDonald Industries, Inc. v. Rollins Leasing Corp.,* 26 Wash.App. 376, 613 P.2d 800 (1980). See also Bonner County v. Panhandle Rodeo Ass'n Inc.,* 101 Idaho 772, 620 P.2d 1102 (1980); *Farmers Ins. Group v. Sessions,* 100 Idaho 914, 607 P.2d 422 (1980). Hence, the courts have held that the burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage. Goforth v. Franklin Life Ins. Co.,* 202 Kan. 413, 449 P.2d 477 (1969); *Anderson v. Nationwide Life Ins. Co.,* 6 Kan.App.2d 163, 627 P.2d 344 (1981); *Harvey's Wagon Wheel, Inc. v. MacSween,* 96 Nev. 215, 606 P.2d 1095 (1980); ... [See also] Farmers Ins. Group v. Sessions,* 100 Idaho 914, 607 P.2d 422 (1980) (holding that an exclusionary clause in an insurance contract that lends itself to different interpretations is ambiguous and must be construed in a manner most favorably to the insured).* (Emphasis added.)

*Accord, Cooling, supra,* 269 So.2d at 297.

■ Construing this policy most strongly against American Hardware and in favor of Chancler, we find that it does not clearly and precisely exclude claims grounded in negligence. What the exclusion does at best, and this in a rather inartful manner, is deny coverage *only* for claims grounded in strict products liability. We reach this conclusion by noting the following: The "products hazard" definition is defined as an injury "arising out of the named insured's products...." Nowhere does it purport to exclude injuries arising out of negligent conduct, and we decline to so expand the definition. We therefore hold that insofar as Christensen has made out a claim for negligence, and he has, Chancler's policy does not exclude coverage pursuant to the "products hazard" exclusion.

## II.

The district court's decision that exclusion "p" precludes coverage also requires us to determine if the "completed operations hazard" exclusion applies to exclude coverage. We hold that it does not.

■ The exclusion, as quoted above, makes an exception for bodily injury arising out of "the existence of ... uninstalled equipment." It also only purports to cover bodily injury arising out of "operations."[3]

---

**3.** A partial definition of "operations" is found within the "completed operations hazard" definition. It is defined there as follows: "materi-als, parts, or equipment furnished in connection therewith." It is readily apparent that this definition is incomplete and cannot satisfactorily

Finally, the exclusion does not purport to deny coverage for bodily injury arising out of the insured's failure to make required representations and warnings. From the foregoing, we rule that the "uninstalled equipment" exception to this exclusion applies to this case and permits coverage. We also rule that the exclusion does not cover an insured's *failure to warn* when he or she should have done so. Our reasons for these two conclusions follow.

First, applicable regulations and principles underlying common law negligence lead to the conclusion that Chancler was negligent per se and violated law in failing to install a "durable load rating chart" for the purpose of informing users of the crane of the maximum loads sustainable by the crane. *See* 29 C.F.R. § 1910.-180. An injury resulting from improperly installed equipment is legally equivalent to an injury resulting from uninstalled equipment. *United States Fidelity & Guaranty Co. v. National Tank and Machine Works, Inc.*, 402 So.2d 925, 928 (Ala.1981). Chancler's failure to install proper equipment (the durable load rating chart) was the proximate cause of Christensen's injuries. We hold that failure to install proper equipment is not excluded from coverage by the "completed operations hazard," because we view the defective equipment to be "uninstalled equipment" as the term is used in the policy.

Second, even were we unable to conclude that the failure to install the load rating chart does not make the equipment "uninstalled equipment," we are still convinced that coverage is not excluded, because the exclusion does not cover a failure to make required representations and warnings. The thrust of the "completed operations hazard" exclusion, as far as we

stand on its own. Nevertheless, that is all we have to go on in discerning what the term

can discern, is to exclude from coverage (1) injuries caused by "operations" performed by the insured; and (2) injuries arising out of "reliance upon a representation or warranty." It does *not* exclude coverage where there has been a failure to give a proper warning, *Cooling, supra,* at 297–98, and we decline to so extend it.

In the words of the *Cooling* court, if the parties "intended to limit the liability of the insurer by excluding coverage for omissions and failure to warn when there is no affirmative duty to warn, the insurer could have so provided." *Id.* The policy provides for general coverage, and the exclusions contained therein do not specifically delete the negligence which Chancler is alleged to have committed. Accordingly, we hold that the insurance policy purchased by Chancler does cover the alleged harm caused, and that pursuant to that policy Chancler is entitled to the benefits contained therein. Costs to appellants; no attorney's fees.

DONALDSON, C.J., and WARD, J. (pro tem) concur.

KRAMER, J. (pro tem) concurs in the result.

SHEPARD, J., dissents without opinion.

means in its complete sense.