Argued and submitted July 31, reversed December 4, 1985, reconsideration denied
January 31, petition for review denied April 15, 1986 (300 Or 722)

## LAMINATED WOOD PRODUCTS, CO. et al,
*Respondents,*

*v.*

## PEDERSEN, dba Pedersen Insurance,
*Defendant,*

## UTICA MUTUAL INSURANCE COMPANY,
*Appellant,*

## PEDERSEN, dba Pedersen Insurance,
*Third-Party Plaintiff,*

## UTICA MUTUAL INSURANCE COMPANY,
*Appellant,*

*v.*

## FIREMAN'S FUND INSURANCE COMPANY,
*Respondent.*

(79-12-16, 256-L; CA A30782)

711 P2d 165

Paul R. Duden, Portland, argued the cause for appellants. With him on the briefs was Tooze Kerr Marshall & Shenker, Portland.

Gary V. Abbott, Portland, argued the cause for respondents. With him on the brief were Emil R. Berg, and Hallmark, Griffith & Keating, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

### WARREN, J.

Laminated Wood Products Co. (Lamwood) commenced this action to recover for Fireman's Fund Insurance Co.'s (Fireman's) alleged breach of contract in failing to defend litigation and pay a judgment against Lamwood, its insured. An alternate theory for recovery was that Fireman's agent, Pedersen, insured by Utica Mutual Insurance Co. (Utica), was negligent in failing to procure insurance that would have covered the claim against Lamwood and for failure to procure excess liability coverage. In an amended complaint, Lamwood chose to proceed against Pedersen only.

Lamwood is a manufacturer of prefabricated buildings. In 1977, it sold a building to M&O Farms (M&O), a Minnesota business. M&O commenced an action in Minnesota against Lamwood and others in 1978 to recover for claimed defects in the manufacture and construction of the building. Lamwood tendered the defense to Fireman's, which initially accepted but then rejected the defense, because the policy it had issued to Lamwood did not provide products liability coverage. M&O obtained a judgment against Lamwood, and this litigation followed.

Because part of the judgment appealed from was against Pedersen, who does not appeal, and the appeal is on behalf of Utica, against which no part of the judgment appealed from was entered, a full procedural history is necessary.

Plaintiffs, Lamwood (and its president, Huling), commenced this action against Fireman's for Fireman's failure to defend and pay the judgment in the M&O litigation and against Pedersen for his failure to procure adequate insurance. Fireman's and Lamwood then entered into an agreement whereby Fireman's loaned Lamwood an amount of money to satisfy the M&O judgment and all costs and attorney fees Lamwood had incurred in the M&O litigation. In return, Lamwood agreed to cooperate with Fireman's and to continue to prosecute the errors and omissions action against Pedersen and appointed Fireman's its agent and attorney-in-fact. The loan was without interest and repayable "only in the event and to the extent of any net recovery Lamwood may obtain from any person * * * arising from the procurement and issuance of the * * * insurance policy." Lamwood pledged all of

its claims arising from the procurement of the policy as security for the repayment of the loan. It also released Fireman's from any claims arising out of the policy and the Minnesota litigation. Lamwood then filed the amended complaint eliminating Fireman's as defendant and proceeded against Pedersen alone for his failure to procure proper insurance.

Pedersen then made Fireman's a third-party defendant, claiming indemnity as well as damages for breach of contract, injury to his reputation and loss of business. Utica was Pedersen's errors and omissions insurer and represented him. The trial was bifurcated. In the trial of Lamwood's claims, the jury returned a verdict in favor of Lamwood and against Pedersen. The trial court entered a judgment on that verdict on November 16, 1982, and stayed execution and enforcement of the judgment on December 28, 1982, pending resolution of Pedersen's third-party complaint against Fireman's.[1]

On May 10, 1983, Pedersen moved for an order substituting his own attorney "as attorney of record" for the attorney hired by Utica. In an affidavit supporting the motion, Pedersen stated that, if the requested order were obtained, his new attorney had been instructed to dismiss with prejudice Pedersen's third-party claim against Fireman's. The court issued the order on July 11, 1983.

After Pedersen's motion to substitute attorneys was made, but before it was granted, Utica moved on May 31, 1983, to intervene in the action as defendant and third-party plaintiff. It alleged that it was Pedersen's insurer, with a policy limit of $100,000 per occurrence and with the right to defend any claim brought against Pedersen alleging an error or omission in his conduct of the insurance business. Utica alleged that it had employed lawyers to represent Pedersen in the action and that Pedersen had notified the lawyers that he no longer wished to have them represent him. Utica stated that it was in Pedersen's best interest to appeal the judgment in favor of Lamwood and to litigate the third-party complaint against Fireman's, which Pedersen had indicated he now

---

[1] It may not have been necessary to stay the judgment, which was not a final judgment under ORCP 67B, because it did not dispose of all the claims in the action.

wished to dismiss. Utica stated that it had been told that Pedersen and Fireman's had entered into an agreement whereby Fireman's would protect Pedersen from any liability arising out of the Lamwood judgment against him and that the lawyers which Pedersen wished to substitute regularly represent Fireman's. Utica alleged that, if it were not allowed to intervene, Pedersen would not appeal the judgment and would dismiss his third-party complaint against Fireman's, and substantial rights of Pedersen and Utica would be adversely affected.

The court issued an order allowing Utica to intervene as defendant and third-party plaintiff on August 11, 1983. Utica then filed a third-party claim against Fireman's, seeking to require Fireman's to indemnify Utica for any amounts Utica might be required to pay to Lamwood on Pedersen's behalf. On Pedersen's motion, on August 9, 1983, the court entered an order dismissing Pedersen's third-party complaint against Fireman's with prejudice. On October 20, 1983, the court, without stating its reason, granted Fireman's motion for summary judgment and/or dismissal of Utica's third-party complaint. On November 1, 1983, the court entered judgment in favor of Fireman's on the two third-party claims and ordered that the prior judgment against Pedersen was final. Utica moved for judgment NOV. That motion was denied on January 3, 1984. Utica then filed a notice of appeal on January 20, 1984. Pedersen did not appeal from the judgment.[2]

■     Utica assigns as error various rulings in the trial of Lamwood's claims against Pedersen and the dismissal of its third-party complaint. Because of its contractual obligation to pay part of Pedersen's liability to Lamwood, Utica is a real party in interest on this appeal. Fireman's does not claim otherwise. Utica intervened in the action as defendant and third-party plaintiff to protect its interests when it appeared that its insured, Pedersen, had discharged the lawyers Utica had retained for him and would not appeal the judgment or prosecute his third-party claim against Fireman's. Utica's allegations in its motion to intervene have been substantiated, at least inferentially. Pedersen dismissed his claim against Fireman's and did not appeal the judgment against him.

---

[2] Because Pedersen is not an appellant, the decision in this appeal does not affect his liability under the judgment, but only Utica's.

Lamwood and Fireman's do not contest Utica's right to intervene, its financial stake in the judgment against Pedersen or its right to raise on appeal errors which Utica's lawyers preserved while representing Pedersen in the trial. They only contend that the issues Utica seeks to raise on appeal were not preserved, because they were raised for the first time in Utica's motion for judgment NOV. We agree that issues raised for the first time in a motion for judgment NOV may not be asserted on appeal; however, in the absence of a claim that we should not, we will consider claims of error preserved for Pedersen while he was represented by Utica. As we will discuss below, we conclude that the errors Utica raises were preserved for Pedersen at trial and proceed to reach the merits.

Utica's first assignment contends that the trial court erred in denying Pedersen's motion for a directed verdict on the ground that there was no evidence that his negligence, if any, caused plaintiffs' loss. The thrust of the argument is that, even had Pedersen procured the coverage which Lamwood claims that it desired, M&O's claim against Lamwood would nevertheless not have been covered under the Fireman's policy. Accordingly, because Fireman's would have had no duty to defend or pay, Pedersen's negligence did not cause Lamwood's loss. The trial court denied the motion, ruling that the issue of causation was a jury question. On appeal, Utica contends that the issue of causation turns on a comparison of the insurance contract, assuming it to contain the coverage plaintiffs alleged that they told Pedersen they wanted, with the claims made against Lamwood. When so viewed, it argues, the claims would not have been covered, and Pedersen was entitled to judgment as a matter of law.

Plaintiffs alleged in their complaint that Pedersen had agreed to procure an insurance policy which would provide Lamwood with coverage "for all standard and customary perils for a business such as conducted by Lamwood other than 'products' coverage" and that the policy did not comply with that agreement, because it expressly excluded "completed operations" coverage and excess liability coverage was not obtained. Plaintiffs concede that they told Pedersen that they did not want "products" coverage but claim that they did want "completed operations" coverage. The policy Fireman's

issued excluded coverage for both the products and the completed operations hazards.

Interpretation of an unambiguous contract is a matter of law for the court. *Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 643, 576 P2d 1244 (1978). Similarly, interpreting a legal complaint to determine what sorts of claims are stated and deciding whether the claims would be covered by an insurance policy present issues of law.

An insurer has a duty to defend if the pleading contains allegations which, if true, would impose liability for conduct clearly covered by the policy. *Riedel v. First National Bank,* 287 Or 285, 294, 598 P2d 302 (1979). There is also a duty to defend if the allegations are ambiguous but may reasonably be interpreted to include an incident within the policy coverage. *Blohm et al v. Glens Falls Ins. Co.,* 231 Or 410, 416, 373 P2d 412 (1962).

M&O's complaint alleged that Lamwood "designed, manufactured, distributed and/or supplied and placed on the market [the] pre-cut and fully packaged building." Other defendants in the M&O action supplied other materials and equipment for the building and contracted for its construction. Insofar as the complaint concerned Lamwood, M&O alleged that Lamwood's product was "in a defective condition and unreasonably dangerous" and sought to hold Lamwood liable for (1) its failure to warn of that condition, (2) its negligence in designing, manufacturing, distributing, supplying and shipping the product and in failing to supply proper instructions and specifications, (3) its breach of express and implied warranties in the sale of the product and (4) its reckless or intentional misrepresentations concerning the quality of the product.[3]

---

[3] In addition to the allegations quoted in the text, M&O's complaint specifically alleged

"LAMWOOD * * * failed to warn or to instruct the plaintiffs of the defective and unreasonably dangerous condition of [its] products. * * *

"* * * * *

"LAMWOOD * * * expressly and impliedly warranted [its] products in the

We consider the policy as if it contained coverage for the completed operations hazard. The question is whether Fireman's would have had a duty to defend M&O's claims against Lamwood under the completed operations coverage. The parties agree that the following definitions of the products and the completed operations hazards would have been included in the policy. The products hazard

---

following ways, among others:
  a. implied warranty of fitness for a particular purpose;
  b. implied warranty of merchantability; and
  c. express oral warranties and express written warranties. * * *

"* * * * *

"LAMWOOD * * * breached [its] oral and written express warranties and [its] implied warranties by providing products which were not fit for the particular purposes for which they were intended, not of merchantable quality, and not in conformance with the express oral warranties and express written warranties that the potato storage building would be a quality structure suitable for the proper, effective and safe storing and conditioning of potatoes. * * *

"* * * * *

"LAMWOOD * * * owed plaintiffs a duty of care in designing, manufacturing, distributing, supplying and/or shipping [its] products and a duty of care in the preparing and communicating to plaintiffs proper specifications and instructions for the construction and use of the potato storage building and proper warnings concerning dangers involved in the use of the potato storage building by plaintiffs as purchasers and consumers of [its] products.

"LAMWOOD * * * breached [its] duties by negligently designing, manufacturing, distributing, supplying and/or shipping the potato storage building to plaintiffs and by failing to supply proper specifications and instructions for its construction and use and by failing to warn plaintiffs of the dangers involved in the use of the potato storage building. * * *

"* * * * *

"LAMWOOD [is] in the business of selling [its] products to the public and * * * through [its] advertising directed at the public, including plaintiffs, and through all statements made to the plaintiffs, represented to plaintiffs that [its] products would safely and effectively store and condition potatoes at plaintiffs' proposed site.

"LAMWOOD * * * knew, or should have known, that these representations were false, or made the representations with reckless regard for their truth. The conduct of LAMWOOD * * * showed a malicious, willful and reckless disregard for the plaintiff's [sic] rights and demonstrated a willful indifference to the rights and safety of plaintiffs and others.

"LAMWOOD * * * intended that [its] representations would be relied upon by plaintiffs in making their decision to purchase the potato storage building and its component systems. * * *

"Plaintiffs were not aware that the representations were false and justifiably relied upon the truth of the representations in making their decision to purchase the potato storage building and its component systems."

"* * * includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others. * * *"

The completed operations hazard

"* * * includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. * * *"

Henderson, "Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know," 50 Neb L Rev 415 (1971), discusses which types of hazards are covered by these two clauses. He concludes that the products provision should be given

"* * * a broad construction so that it covers any injury caused in fact by a product manufactured, sold, handled or distributed by the insured. * * * This would leave the completed operations provision to cover those services not involving products and any duplication in coverage between the two would be avoided. * * *" 50 Neb L Rev at 428-29.

Under that interpretation the products hazard covers any claim for damages arising from a product, including representations or warranties made with respect thereto. The completed operations hazard covers injuries arising from the provision of a service separable from the sale of a product, such as installation of a product or construction of a building.

That interpretation of the two provisions has been followed in several cases. *American Trailer Service v. Home Ins. Co.*, 361 NW2d 918 (Minn App), *rev allowed* 367 NW2d 83 (1985); *Friestad v. Travelers Indem. Co.*, 260 Pa Super 178, 393 A2d 1212 (1978). In *Chancler v. American Hardware Mut. Ins. Co.*, 107 Idaho 953, 694 P2d 1301 (App), *rev allowed* (1985), the insured sold a crane which he had modified and which caused a personal injury. The court held that the injury fell within the products hazard, which was defined identically to the one in

this case and excluded from the policy, and that the insured's alleged failure to provide adequate safety information concerning the product was also within the products hazard exclusion.

> "* * * We believe it is conceptually unsound to dissociate a product from directions or information required for its safe use. * * *
>
> "We recognize, of course, that this type of exclusion would not apply if an injury were caused by a service distinguishable from the product. * * * But where, as here, the product allegedly has caused the injury, and the purported 'service' consists only of furnishing information about the product and its limitations, the exclusion applies. * * *" 107 Idaho at 955.

We find the provisions unambiguous and agree with the interpretation of them discussed in the Henderson article and approved in the above-cited cases. Applying that construction to the M&O claims, we conclude that the complaint stated claims which were exclusively within the products hazard for which plaintiffs concede they did not want coverage. The claims that the product was unreasonably dangerous and that Lamwood failed to warn of the condition and negligently designed, manufactured and supplied the product clearly were to recover for damage "arising out of the named insured's products." Likewise, the claims based on warranties and representations made with respect to the product were clearly within the definition of the products hazard for which coverage was excluded in accordance with plaintiffs' request. M&O's complaint did not state claims which could be considered to be for completed operations.[4]

Because M&O's claims against Lamwood would not have been covered, even if Fireman's policy had covered the completed operations hazard, plaintiffs failed to establish, as a

---

[4] On this appeal, plaintiffs argue that negligent advice given by Lamwood concerning construction, during construction, was a risk that would be covered by the completed operations provision of the policy and that evidence in this case supported that theory. That, however, was not a theory pled by M&O against Lamwood and could not have been a basis for M&O's judgment. *See* n 3, *supra.* We examine Fireman's duty to defend and pay only in the light of the claims advanced by M&O.

Plaintiffs did not claim that, even if Fireman's was not required to defend, it was required to pay the judgment, because the M&O judgment was in fact based on new allegations and proof of facts which were within the completed operations coverage. *See City of Burns v. Northwestern Mutual,* 248 Or 364, 368-69, 434 P2d 465 (1967).

matter of law, that Pedersen's failure to procure completed operations and excess liability coverage caused their injury. The trial court erred in denying Pedersen's motion for a directed verdict.[5]

Reversed.

---

[5] Because we reach this conclusion, we need not consider Utica's other assignments of error concerning the trial against Pedersen. Given the unusual way in which this case reaches us and Fireman's and Lamwood's concession that Utica is entitled to raise the errors it preserved in the trial court for Pedersen, the net effect of our decision is that Utica is not responsible to pay the judgment against Pedersen. This is so because had Pedersen not prevented Utica from appealing for him, the decision we reach here would have resulted in a reversal of the judgment against him. Accordingly, Utica's appeal of the dismissal of its third-party complaint against Fireman's for indemnity and contribution is moot.