**ALD CONCRETE & GRADING COMPANY, INC. et al., Appellees,**

v.

**CHEM–MASTERS CORP. et al., Appellees;**

**Buckeye Union Insurance Company, Appellant.**

[Cite as *ALD Concrete & Grading Co. v. Chem–Masters Corp.* (1996), 111 Ohio App.3d 759.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE11–1521.

Decided June 18, 1996.

760

*Michael F. Colley Co., L.P.A.,* and *Daniel N. Abraham,* for appellees ALD Concrete and Grading Co. and Stanley Electric Co., U.S., Inc.

*Arter & Hadden* and *John P. Gartland,* for appellees Columbus Builder's Supply Company and Indiana Insurance Company.

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A.,* and *Thomas J. Keener,* for appellant Buckeye Union Insurance Company.

DESHLER, Judge.

Plaintiff-appellee, ALD Concrete and Grading Company, Inc. ("ALD"), was employed as a subcontractor to pour and finish the concrete floor slab in a building under construction for plaintiff-appellee, Stanley Electric Co., U.S., Inc. ("Stanley Electric"), near London, Ohio. ALD used a concrete floor hardening and coloring agent sold under the name Concolor, manufactured by defendant-appellee, Chem–Masters Corp. ("Chem–Masters"), and sold locally through defendant/third-party plaintiff-appellee, Columbus Builder's Supply, Inc. ("Builder's Supply"), a wholesale distributor of construction materials and supplies.

The Concolor product was applied to the concrete floors poured by ALD in the Stanley Electric facility as these were curing and hardening. As a result of the application of the Concolor product, the concrete floors blistered, spalled, fractured, debonded, and flaked.

The first action in this matter was filed by ALD and Stanley Electric against Chem–Masters and Builder's Supply in the Madison County Court of Common Pleas. That action was ultimately voluntarily dismissed by plaintiffs. The current action originated in the Franklin County Court of Common Pleas with a product liability and negligence action brought by ALD and Stanley Electric, again against Chem–Masters and Builder's Supply.

At the time the problems occurred with the floors at the Stanley Electric facility, Chem–Masters was insured under a policy of general liability insurance issued by defendant-appellant, Buckeye Union Insurance Company ("Buckeye Union"). Although the specific terms of the policy remain an issue for interpretation in this appeal, they can in general be described as providing coverage for the negligent acts of Chem–Masters' employees, but excluding coverage for product hazard claims.

Buckeye Union was given notice and an opportunity to defend the suit against Chem–Masters, but denied coverage for the claim and declined to defend the suit. Prior to resolution of the underlying action against Chem–Masters, plaintiffs filed a separate declaratory judgment action to determine the validity of the denial of coverage by Buckeye Union. That declaratory action was eventually voluntarily dismissed without prejudice by the plaintiffs. Plaintiffs then pursued their action against Chem–Masters, and later filed an uncontested motion for summary judgment.

On June 11, 1993, the trial court entered summary judgment for plaintiffs ALD and Stanley Electric in the amount of $447,515 against Chem–Masters. The court specifically found that plaintiffs' damages were caused by the sole negligence of Chem–Masters, and that there was no evidence of negligence on the part of Builder's Supply. The court found that Builder's Supply and its insurer, Indiana Insurance Company, had discharged a portion of the common liability of defendant Chem–Masters towards the plaintiffs, and that, in the absence of any evidence of negligence on the part of Builder's Supply, the entire amount of the $95,000 settlement paid by Builder's Supply to plaintiffs represented an excess of Builder's Supply common liability. Builder's Supply, therefore, was entitled to recover from Chem–Masters on its cross-claim for contribution and/or indemnity in the amount of $95,000.

After securing judgment against Chem–Masters, the plaintiffs then filed a supplemental petition under R.C. 3929.06 seeking to recover against the liability insurance policy issued to Chem–Masters by Buckeye Union. All parties agreed to waive jury trial on the supplemental petition, and the matter was presented to the trial court on cross-motions for summary judgment, on the basis of the record

previously created in the action against Chem–Masters, upon supplemental written briefs, and upon the oral arguments of counsel. On October 19, 1995, the trial court rendered a decision setting forth findings of fact and conclusions of law, and finding in favor of plaintiffs and against Buckeye Union, finding that the liability insurance coverage under the Buckeye Union policy issued to Chem–Masters was applicable to the underlying judgment in the action against Chem–Masters, and that plaintiffs were entitled to recover from Buckeye Union in the amount of $352,515 for plaintiffs ALD Concrete and Stanley Electric, and $95,000 for defendant/third-party plaintiffs, Builder's Supply and Indiana Insurance Company.

Appellant, Buckeye Union, has timely appealed and brings the following assignments of error:

"1. The trial court erred when it held that the completed operations hazard and products hazard exclusion in the liability insurance policy in question did not bar coverage under the policy for the judgment rendered in this case against the insured, Chem–Masters Corporation.

"2. The trial court erred in denying the motion for summary judgment filed on behalf of the third-party defendant-appellant, Buckeye Union Insurance Company, and erred in granting the motion for summary judgment filed on behalf of the plaintiffs, ALD Concrete & Grading Company and Stanley Electric Company and in granting the motion for summary judgment filed on behalf of the defendants and third-party plaintiffs, Columbus Builder's Supply and Indiana Insurance Company."

Appellant's two assignments of error raise common issues, and will be addressed together. Initially we note that summary judgment is a procedural device to terminate litigation without a formal trial. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and must be granted only when it appears from the evidence before the court that reasonable minds can reach only one conclusion, and that conclusion is adverse to the party opposing the motion. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 2, 433 N.E.2d 615, 616; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which the party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (*Celotex v. Catrett* [1986] 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed.)

■ Appellant concedes that issues resolved by the judgment in the underlying action against Chem–Masters are *res judicata* and may not be relitigated in the present supplemental petition proceeding. The more precise doctrine applicable in this case is that of collateral estoppel, a term which refers to the doctrine of issue preclusion. See, generally, *Columbus v. Triplett* (1993), 91 Ohio App.3d 239, 243, 632 N.E.2d 550, 552–553. "It is well established in Ohio that in addition to the parties in a prior action, others may be estopped from relitigating issues decided therein." *Columbus v. Alden E. Stilson & Assoc.* (1993), 90 Ohio App.3d 608, 614, 630 N.E.2d 59, 63. "[Collateral estoppel] does not apply merely to those who were parties to the proceeding. It applies likewise to those in privity with the litigants and to those who could have entered the proceeding but did not avail themselves of the opportunity." *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 367, 544 N.E.2d 878, 881. Because Buckeye Union in the present case was given notice and opportunity to defend in the underlying action, and declined to do so based on an asserted lack of coverage, appellant properly concedes upon appeal that it is collaterally estopped from attacking the factual and legal conclusions of the trial court in the underlying action, most significantly the trial court's finding that the damages were caused by the sole negligence of Chem–Masters.

The issues to be addressed in the present appeal which were not litigated in the underlying action against Chem–Masters concern the application and interpretation of the terms, conditions and exclusions of the insurance policy issued by Buckeye Union to Chem–Masters in relation to the judgment rendered in the underlying action against Chem–Masters. The relevant general liability policy provisions provide as follows:

"The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of

"A. **bodily injury or**

"B. **property damage**

"[T]o which this insurance applies, caused by an *occurrence* and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage* * * *."

The completed operations hazard and products hazard exclusion states:

"It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage of Part VI of the policy does not apply to **bodily injury** or **property damage** included within the Completed Operations Hazard or the Products Hazard."

Within the definitions section of the general liability insurance coverage the term "Products Hazard" is defined as follows:

" 'products hazard' includes **bodily injury** and **property damage** arising out of the **named insured's products** or reliance upon a representation or warranty made at any time with respect thereto, but only if the **bodily injury** or **property damage** occurs away from premises owned by or rented to the **named insured** and after physical possession of such products has been relinquished to others."

The trial court's decision in the underlying case was established on the basis of negligence, specifically "the negligence of Chem–Masters instructing and directing the plaintiff on how to apply the Concolor * * * [and] negligence in failing to properly instruct on how to install their product." In this supplemental proceeding to determine coverage under Buckeye Union's policy, the court concluded as a matter of law that Chem–Masters or its agent failed to properly instruct ALD on the correct use of the Concolor product, "because the instructions given by Defendant would have only accommodated the characteristics of one particular lot of the dry shake material and was [sic ] not suitable when a different lot of the material was encountered. * * * Simply because differences and variations exist within the same type of product does not necessarily make the product defective as a matter of law. The Defendant and its agents failed to exercise due care by failing to properly instruct the Plaintiffs on how to apply Defendant's product given the material variations between lots." The factual basis for these conclusions does not appear to be at issue; that is, neither party contests that there were substantial variations in product characteristics between different lots of Concolor product, that Chem–Masters' employees were on the job site and attempted to provide instruction on application of the product, and that the instruction was not adapted to the varying lot characteristics of the product.

 It is well settled in Ohio that identical standards of interpretation will be applied to insurance contracts as will be applied to other written contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1101–1102. "The fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect." *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88. The language in an insurance policy must be given its plain and ordinary meaning, and only where a contract of insurance is ambiguous and susceptible of more than one interpretation must the policy language be liberally construed in favor of the insured or claimant seeking coverage. *Dairyland Ins. Co. v. Finch* (1987), 32 Ohio St.3d 360, 362, 513 N.E.2d 1324, 1326–1327. The general rule of liberal construction of policies in favor of the insured cannot be employed to create an ambiguity where

none exists. *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 166, 10 OBR 497, 499, 462 N.E.2d 403, 406. Interpretation of a clear and unambiguous insurance contract is a matter of law, subject to *de novo* review by an appellate court. *Nationwide Mut. Fire. Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 685–686.

We find the relevant language of the insurance contract to be clear and unambiguous. Nonetheless, the facts of this case require a close examination of the policy language, in order to determine the scope of the products-hazard exclusion and its applicability to the damages suffered by appellees.

█ Appellees urge us to conclude that the trial court's finding of negligence in the underlying action against Chem–Masters automatically removes the damages from the scope of the products-hazard exclusion, and places them within the general liability coverage of the policy. Appellees argue that, this being the case, and the trial court having made a prior finding of a negligence basis for the damages suffered by appellees, any attempt to apply the products-hazard exclusion to the facts of this case should be collaterally estopped. We disagree. The question of whether the products-hazard exclusion of the Buckeye Union policy applies to on-site negligent instruction on the application of the product was not determined by the trial court in the underlying action against Chem–Masters. The application of the terms of the insurance policy to the facts of this case, in the context of the prior finding of negligence in the underlying action, was an issue left unresolved in the prior proceeding and thus not subject to collateral estoppel.

█ Appellant presents several bases upon which to find that the products-hazard exclusion applies to negligent instruction given in utilization of the product. First, appellant points to the definition of the term "products hazard" contained on page GL7 of the policy, providing as follows:

" '[P]roducts hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto * * *." (Emphasis omitted.)

Appellant argues that the instructions provided by Chem–Masters on the job site constituted a representation that the product would function properly if so applied. Black's Law Dictionary (6 Ed.1990) 1301, variously defines "representation" as "[a]ny conduct capable of being turned into a statement of fact"; "[s]tatement of fact made to induce another to enter into contract"; "[a] statement express or implied made by one of two contracting parties to the other, before or at the time of making the contract, in regard to some past or existing fact, circumstance, or state of facts pertinent to the contract, which is influential in bringing about the agreement."

None of these definitions easily encompasses negligent instruction on the part of Chem–Masters agents or employees. Although a possible corollary of the instruction provided by Chem–Masters personnel on-site might be an implied assertion, warranty, or representation that the product would fulfill its purpose, to focus on this is to place the ancillary before the principal: that is, the negligent instruction was not principally intended to assert the qualities of the product, but to volunteer assistance in its application. Although certain inferences about the suitability of the product can be drawn from such conduct, this does not of itself constitute a representation or warranty sufficient to involve the products hazard exclusion.

■ Alternatively, appellant argues that frequent references to negligent conduct in the applicable Ohio product liability statutes, R.C. 2307.71 *et seq.,* establish that there can be a negligence component in a product liability claim, and, by implication, there could be a negligence component to a "products hazard" as defined under the policy. The statutory provisions, however, are not incorporated into the contract of insurance, and are therefore only of limited utility in the interpretation of the contract's provisions. The issue in this case does not turn upon the statutory definition of "Product Liability," but the interpretation of the policy definition of "Products Hazard."

Appellant further provides a number of foreign state cases which are asserted to support appellant's position. A number of these are distinguishable on the facts, as they incorporate negligence that was more remote, consisting of errors in conception or manufacture of product, or the initial instructions shipped with the product. In the present case, the distinguishing note is that employees of Chem–Masters came to the job site and instructed ALD personnel specifically on the use of Concolor in that particular job.

In a more persuasive case cited by appellant, *Chancler v. Am. Hardware Mut. Ins. Co.* (App.1985), 107 Idaho 953, 694 P.2d 1301, a similar products-hazard exclusion was held inapplicable because the court found, "[I]t is conceptually unsound to disassociate a product from directions or information required for its safe use. Indeed, whether a product is defective may be determined by reference by such information, or the lack of it. * * * If an injury caused by a product were treated as arising not from the product itself but from a failure to provide information about the product, the 'products hazard' exclusion would be rendered virtually meaningless. We decline to so emasculate this exclusion." *Id.* at 955, 694 P.2d at 1303. While this does articulately point out the difficulty in attributing a product failure solely to either the inherent qualities of the material or the information provided to the consumer in order to make safe and productive use of the product, we note that the defendant in *Chancler* had failed to provide necessary information *ab initio,* rather than coming to the job site and actively

providing counsel and assistance. Moreover, although this is not of overwhelming relevance when applying persuasive authority from outside the jurisdiction, we further note that the appellate court's decision in *Chancler* was explicitly overruled by the Idaho Supreme Court in *Chancler v. Am. Hardware Mut. Ins. Co.* (1986), 109 Idaho 841, 712 P.2d 542. The Idaho Supreme Court found that the exclusion, which contained language similar to that in the case before us, defined products hazard as "arising out of the named insured products." The court stated, "[N]owhere does it purport to exclude injuries arising out of negligent conduct, and we decline to so expand the definition." *Id.* at 847, 712 P.2d at 548.

The above cases point out the difficulty in determining when negligence on the part of the employees or agents of a defendant, although related to the use of a defendant's product, ceases to be so intertwined with the product itself that it cannot be separated from the performance thereof, and gains a legal life of its own for purposes of attributing the theory of liability upon which recovery may be had against the defendant. Both parties have quoted in their briefs from the illustrative case of *Tidewater Assoc. Oil Co. v. Northwest Cas. Co.* (C.A.9, 1959), 264 F.2d 879, 882, in which the court stated, "In practically every case in which injury or damage is caused by the handling or use of a product, or by a defective condition in such product, the occurrence causing the injury or damage can be traced to some pre-existing negligence * * *. Thus, if the allegation of pre-existing negligence were to be regarded as controlling, the result would be to emasculate the product liability exclusion." Conversely, we must observe that not every instance of negligence on the part of an insured can be drawn into the products-hazard exclusion merely because it is in some manner associated with a finished product.

The facts in the case before us lead us to conclude that the negligence of Chem–Masters' employees was not of the pre-existing nature which logically can be subsumed into the product itself for purposes of the products-hazard exclusion in the insurance contract. The type of negligence exhibited in this case consisted of Chem–Masters' employees coming to the job site and affirmatively providing flawed instructions on the application of the product, leading to poor product performance and damages. It is true that there exists a continuous range of possibilities in determining whether instructions provided with a product constitute representations as to that product, or a form of independent advice or consultation which assumes a viability, for purposes of liability, independent of the product itself; we expressly make no determination, for instance, whether the products-hazard exclusion would apply if the package labeling had carried incorrect application instructions, and those had led to the damages in this case. Nonetheless, we find that the negligence of Chem–Masters' employees in provid-

ing application instructions on the job site does not fall within the products-hazard exclusion of the policy as a matter of law, and that the trial court accordingly did not err in granting summary judgment to appellees because the damages awarded to appellees fall within the general liability coverage of the policy issued by appellant to Chem–Masters.

In accordance with the foregoing, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and LAZARUS, JJ., concur.