City of COLUMBUS et al., Appellees,

v.

ALDEN E. STILSON & ASSOCIATES, n.k.a. Stilson & Associates, Inc., Appellant.

[Cite as *Columbus v. Alden E. Stilson & Assoc.* (1993), 90 Ohio App.3d 608.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1320.

Decided Sept. 30, 1993.

*Ronald J. O'Brien,* City Attorney, and *Daniel W. Drake,* Assistant City Attorney, for appellee city of Columbus.

*Porter, Wright, Morris & Arthur* and *Thomas A. Young,* for appellee Johnson Controls, Inc.

*Lane, Alton & Horst, Jeffrey W. Hutson* and *Rick O. Wuerth,* for appellant.

---

DESHLER, Judge.

Appellant, Alden E. Stilson and Associates (n.k.a. Stilson & Associates, Inc.) ("Stilson"), appeals from a judgment of Franklin County Court of Common Pleas granting summary judgment for appellees, city of Columbus, and Johnson Controls, Inc. ("JCI"), and overruling appellant's motion for summary judgment.

The events leading up to this litigation revolve around the construction of the Parsons Avenue Water Treatment Plant in Columbus. In 1973, the city and Stilson entered into a contract under which Stilson would provide engineering services for the water treatment plant project. These services were to include providing detailed plans, specifications, estimates, review of contractor's drawings, and contracting documents. Stilson was also to provide inspection of completed work and submit the final report for city acceptance of the project.

The contract between the city and Stilson contained an indemnity clause which read as follows:

"The Engineers [Stilson] shall assume the defense of and indemnify and save harmless the City from any claims or liabilities, of any type or nature to any person, firm or corporation, arising in any manner from the Engineers' performance of the work covered by the engineering contract, and [they] shall pay any judgment obtained or growing out of said claim or liabilities or any of them."

In 1979, JCI and the city entered into a contract for provision of the instrumentation and control systems for the water treatment plant project. During execution of this contract, disputes arose between JCI and the city regarding allegedly inadequate drawings, plans, and data furnished by the city and Stilson as the primary engineering consultant, leading to delays and increased costs for JCI. In 1983, JCI presented claims to the city for $2.3 million in additional compensation.

After discussions between JCI, the city, and Stilson failed to resolve JCI's claims for additional compensation, JCI filed suit on September 6, 1985 in the United States District Court for the Northern District of Texas, where the JCI Systems Engineering & Construction Division was headquartered. The complaint named the city as sole defendant, and alleged inadequate performance under the contract by the city, and Stilson as the primary engineering consultant, leading to construction delays and increased costs. JCI's complaint prayed for compensatory damages in the amount of $2.5 million and punitive damages of $5 million.

On October 2, 1985, the city notified Stilson of the Texas lawsuit and invoked the indemnity agreement to demand that Stilson defend the suit. Stilson declined to do so by letter on December 3, 1985. On September 7, 1986, the city again notified Stilson that it intended to enforce the indemnification clause and that settlement negotiations were under way. In the same letter, the city again demanded that Stilson participate in the defense of the Texas suit or, in the alternative, participate in settlement negotiations. Stilson again declined to do so.

The settlement negotiations between the city and JCI eventually led to a consent judgment entered by the United States District Court for the Northern District of Texas on January 13, 1987. The consent judgment provided that JCI was entitled to recover from the city compensatory damages, prejudgment interest, and attorney fees in the amount of $1,620,724.51, with postjudgment interest at 5.93 percent until paid. The judgment further provided that JCI was "entitled to recover judgment against the city on * * * claims, each one of which arises out of and is directly attributable to Stilson's performance of work covered by the Stilson–City contract."

Simultaneously with the consent judgment entry, JCI and the city executed both a partial assignment and a covenant not to execute, which together were intended to limit execution by JCI against the city to $311,961, and assign to JCI the city's rights against Stilson for that part of the judgment in excess of $311,961. Both of these instruments refer to the consent judgment as being entered into contingent upon execution of these two supplemental instruments.

Prior to the Texas consent judgment, the city commenced this action against Stilson on November 19, 1986, in the Franklin County Court of Common Pleas. The city's amended complaint, filed after the entry of the Texas consent judgment, demands judgment as follows:

"(1) That the Court declare the rights, duties and obligations of the parties with respect to the contract, the indemnity agreement, and the claims asserted in the Complaint initiating the Texas lawsuit;

"(2) That the Court declare that defendant Stilson and/or defendant Stilson, Inc. was obligated to assume the defense of and indemnify the City of Columbus from all claims asserted by Johnson Controls, Inc. in the Texas lawsuit and arising out of the performance of the work by defendant Stilson pursuant to its contract with the City of Columbus;

"(3) That the Court award judgment in favor of the City of Columbus and against defendant Stilson and/or defendant Stilson, Inc., for the full amount of the judgment rendered against the City of Columbus on January 13, 1987 in the Texas lawsuit, to wit, the amount of $1,620,724.51, plus interest on said amount at the rate of 5.93% per annum from January 13, 1987, until said amout [sic ] is paid;

"(4) That the Court award judgment in favor of the City of Columbus against defendant Stilson and/or defendant Stilson, Inc. for compensatory damages in the amount of $350,000, exemplary damages in the amount of $1,250,000, attorneys fees in the approximate amount of $150,000, and costs[.]"

JCI was eventually joined as a plaintiff to this action, and JCI and the city subsequently filed a joint motion for partial summary judgment. Stilson responded with its own motion for summary judgment. The trial court granted

summary judgment for JCI and the city, awarding the city $311,961 and attorney fees, and awarding JCI $1,308,763 and attorney fees. The court also entered declaratory judgment finding that Stilson was required by the indemnity clause in its contract with the city to assume the defense of the Texas lawsuit, and that Stilson was bound by the judgment entered by the federal district court in that case. Stilson has timely appealed, bringing the following assignments of error:

"1. The trial court erred in sustaining plaintiffs-appellees' joint motion for summary judgment.

"2. The trial court erred in overruling defendant-appellant's motion for summary judgment."

Because a discussion of the first is dispositive of the second, we will discuss only Stilson's first assignment of error. It is fundamental that, upon a motion for summary judgment, Civ.R. 56 requires that a trial court examine the evidence, drawing all inferences in a light most favorable to the party opposing the motion, and determine (1) whether the moving party has demonstrated there is no genuine issue of any material fact, (2) whether the moving party is entitled to summary judgment as a matter of law, and (3) whether reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made, after having construed the evidence most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which the party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.

In support of its first assignment of error, Stilson first asserts that the indemnification clause in the city-Stilson contract is ambiguous and requires interpretation. Stilson specifically urges us to read the clause to require negligence on the part of Stilson before a duty to indemnify could arise. Stilson relies on the affidavit of one of its principals as evidence that similar clauses in previous contracts with the city had been understood to require indemnification only for losses arising due to Stilson's negligence.

We find the language of the indemnification clause to be clear and unambiguous, permitting no alteration under the guise of interpretation:

"The Engineers [Stilson] shall assume the defense of and indemnify and save harmless the City from any claims or liabilities of any type or nature to any person, firm or corporation, arising in any manner from the Engineers' [Stilson's] performance of the work covered by the engineering contract, and [they] shall pay any judgment obtained or growing out of said claims or liabilities or any of them."

· The clear and unambiguous language of the indemnification agreement is enforceable, despite its very broad scope. *Glaspell v. Ohio Edison Co.* (1987), 29 Ohio St.3d 44, 29 OBR 393, 505 N.E.2d 264, paragraph one of the syllabus. Because we do not read the prerequisite of negligence into the indemnification clause, we do not reach a series of arguments raised by Stilson, seeking to prove that the duty to indemnify was merely inchoate, absent a judicial determination of negligence on the part of Stilson.

We next turn to issues surrounding the effect of the Texas consent judgment in the present action. Regrettably, the judgment entry in the trial court was not accompanied by a decision. It appears, however, that the trial court found that the factual issue of whether the city's liability to JCI arose out of Stilson's performance under the city-Stilson contract, thereby giving rise to a right of indemnification, was conclusively resolved by a declaration to that effect in the Texas consent judgment.

Stilson challenges this conclusion by asserting that Stilson was not a party to the Texas lawsuit, and thus cannot be bound by the findings and judgment entered therein. Stilson further asserts that the factual conclusions relied upon in a consent judgment do not have determinative effect in a later proceeding because, in a consent judgment, there has been no opportunity to fully litigate the issues in a full trial. Finally, Stilson seeks to attack the validity of the Texas consent judgment as fraudulent and collusive. None of these arguments is sustainable, and the trial court's determination that no factual issue remained on the question of whether the city's liability to JCI arose from Stilson's performance under the city-Stilson contract is not erroneous.

It is well established in Ohio that in addition to the parties in a prior action, others may be estopped from relitigating issues decided therein.

"[Collateral estoppel] does not apply merely to those who were parties to the proceeding. It applies likewise to those in privity with the litigants and to those who could have entered the proceeding but did not avail themselves of the opportunity." *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 367, 544 N.E.2d 878, 880. See, also, *Wright v. Schick* (1938), 134 Ohio St. 193, 12 O.O. 6, 16 N.E.2d 321; *Hainbuchner v. Miner* (1987), 31 Ohio St.3d 133, 31 OBR 292, 509 N.E.2d 424.

When judgment is obtained against an indemnitee, an indemnitor who has received proper notice and opportunity to defend the action falls in that class of nonparties who are bound by the outcome. *Maryland Cas. Co. v. Frederick Co.* (1944), 142 Ohio St. 605, 27 O.O. 529, 53 N.E.2d 795; *Bank v. Bank* (1903), 68 Ohio St. 43, 67 N.E. 91; *Miller v. Rhodes* (1870), 20 Ohio St. 494. The evidence in the record is that Stilson was on at least two occasions given notice of the

Texas lawsuit and requested by the city to participate in its defense. Having declined to do so, Stilson is bound by the resolution of those issues in the Texas case which are applicable in the present case, under the doctrine of *res judicata.*

■ Additionally, Stilson cannot attack the effect of the Texas judgment because it is a consent judgment. Under Ohio law, a consent judgment has the same binding effect as one entered by the court after summary adjudication or full trial. *Horne v. Woolever* (1959), 170 Ohio St. 178, 10 O.O.2d 114, 163 N.E.2d 378; *Sponseller v. Sponseller* (1924), 110 Ohio St. 395, 144 N.E. 48.

■ With regard to the assertion that the Texas consent judgment was obtained through fraud and collusion, Stilson has advanced no evidence to support this. Stilson relies on figures, apparently communicated during settlement negotiations, which indicated a possibility of settlement at an amount well below the amount set within the consent judgment. Settlement negotiations, however, encompass a multitude of factors other than the actual value of a claim; inadmissibility of settlement negotiations under Evid.R. 408 is a sound illustration of their unreliability as an index of the true measure of damages sustained by a plaintiff. Simply invoking these figures is not sufficient for Stilson to raise a factual issue regarding the allegedly fraudulently high amount awarded under the consent judgment, and the record reveals no other evidence to support this assertion.

■ Stilson raises a further argument with regard to its opportunity to defend the Texas lawsuit. Stilson asserts that a conflict of interest prevented it from properly defending both its own interests and those of the city in that action. This alleged conflict arises from two sources. First, Stilson points out that JCI's claims against the city could arise from either Stilson's or the city's performance of construction matters covered by the JCI-city contract, and that Stilson and the city would necessarily have been at odds from the outset of any defense, with each attempting to place responsibility on the other for JCI's damages. We do not find that the facts support this position. Under the city-Stilson indemnification clause, Stilson was to defend the city against, and indemnify the city for, all claims arising in any manner from Stilson's performance under the city-Stilson contract. Certain of JCI's allegations specifically named Stilson as the source of construction delays leading to damages. The city, as sole defendant in the Texas action, was liable to JCI regardless of whether damages arose from the city's performance or that of Stilson; there was, therefore, no incentive for the city to defend by attempting to shift responsibility to Stilson as the specific source of JCI's damages. Since the very broad language of the indemnity agreement made it highly probable that any liability on the part of the city would be indemnifiable, there was likewise little incentive for Stilson to

attempt to shift liability to the city exclusively. Under these conditions, it cannot be said that it was impossible for Stilson to defend both its own interests and those of the city, and no conflict of interest existed because both Stilson and the city desired a finding of no liability. See *Lusk v. Imperial Cas. & Indemn. Co.* (1992), 78 Ohio App.3d 11, 16, 603 N.E.2d 420, 423, motion to certify record overruled (1992), 65 Ohio St.3d 1443, 600 N.E.2d 685.

Stilson's second alleged source of conflict would arise from the adversarial positions of the city and Stilson in another case then pending in the Franklin County Court of Common Pleas, *Royal Globe Ins. Co. v. Alden E. Stilson & Assoc.*, case No. 84CV–02–1114, in which the city had intervened as a party plaintiff. The *Royal Globe* action concerned allegations that Stilson's negligent design on the water plant project had resulted in a safety valve failure and flooding of the project site. The existence of this separate litigation, by itself, also fails to establish a conflict with regard to the Texas lawsuit. Whatever conflict of interest existed in other litigation, both Stilson and the city would have shared an interest in a finding of no liability to JCI in the Texas lawsuit.

Moreover, even if we were to find, as Stilson urges in the arguments set forth above, that a conflict existed, the Ohio Supreme Court has expressly held that where an indemnitor believes that its interest does not coincide with that of the indemnitee, it must enter the case nonetheless, if necessary as a third party defendant:

"It is this opportunity that must be seized. Otherwise, whether seized or not, the opportunity to litigate in the original action will preclude relitigation of liability in the supplemental proceeding." *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 367–368, 544 N.E.2d 878, 881.

Under *Howell*, the time has passed at which Stilson could properly have asserted its right to a judicial determination of its obligation to defend under the indemnity clause. The rule set forth in *Howell* appears to promote judicial economy by preventing relitigation of previously decided issues, while preserving the indemnitor's right to establish either a conflict of interest or nonapplicability of an indemnity provision. We find that on the facts before us, Stilson has allowed the opportunity to pass to establish that it is not liable for the defense of the city, and remains bound by the Texas consent judgment.

The final issue raised by Stilson is whether liability for indemnification should be limited to the amount actually paid by the city under the consent judgment ($311,961), rather than the full amount of the judgment ($1,620,724).

Appellees argue that the wording of the indemnification clause calls for Stilson to "pay any judgment" arising from Stilson's performance of the contract. The appellees cite *Martin v. Bolenbaugh* (1885), 42 Ohio St. 508, which addressed an

indemnification agreement providing that the indemnitor should "pay, or cause to be paid, to the [indemnitee], the full amount of any judgment, or judgment and costs, which may hereafter be recovered against the [indemnitee]." *Id.* at 514. The court held that the indemnitor must pay to the indemnitee the entire amount of the judgment, despite the fact that the indemnitee had paid only part of it.

While the rule stated in *Bolenbaugh* appears to remain the law,[1] we find the case before us distinguishable for two reasons. First, the indemnitee in *Bolenbaugh*, although having paid only part of the judgment, remained solvent and liable for the balance. *Id.* at 511. This is clearly not the situation for the city, which can incur no further loss beyond what it has already paid to JCI, under the effect of the covenant not to execute entered into by JCI and the city at the time of the Texas consent judgment.

Second, we must consider the cumulative effect of the consent judgment, covenant not to execute, and partial assignment contemporaneously entered into by the city and JCI. Taken together,[2] these attempts to implement a selective judgment, deflecting liability upon Stilson without having at any time placed the city at risk for an amount greater than $311,961. We find this to be such a contrived liability against the indemnitor as to be against public policy, as an attempt to expand the indemnitor's obligation to pay "any judgment" beyond what reasonably could have been the understanding of the parties as to the definition of a judgment against the city arising from Stilson's performance under the contract.

We therefore hold that Stilson's liability to the city under the Texas consent judgment and the contractual indemnification clause, until the city is determined to be liable to JCI for a greater amount, is limited to $311,961, or the amount for which the city is liable to JCI under the combined effect of the consent judgment, covenant not to execute, and partial assignment entered in the United States District Court for the Northern District of Texas.

Appellant's first assignment of error is sustained to the extent that appellant's liability to appellees is limited to $311,961. The judgment of the trial court is

---

1. Stilson cites a number of cases which appear to contradict *Bolenbaugh* on this particular point. See, *e.g., Traveler's Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787; *Saalfrank v. O'Daniel* (C.A.6 1976), 533 F.2d 325; *In re Highland Group, Inc.* (Bankr.Ct.N.D.Ohio 1992), 136 B.R. 475. As appellees' brief accurately points out, however, all cited cases supposedly *contra* can be distinguished in that they concern indemnity for *payment or loss*, or indemnity implied by law. The case *sub judice*, as in *Bolenbaugh*, concerns an express contractual agreement to pay "any *judgment*."

2. It is all the more compelling to read these three instruments in conjunction with one another, since the covenant not to execute and partial assignment both explicitly state that the consent judgment is conditional upon their execution.

reversed, and upon remand the trial court is directed to enter judgment for appellees in the amount of $311,961. In view of the foregoing, appellant's second assignment of error is overruled.

*Judgment reversed*
*and cause remanded.*

PEGGY BRYANT, P.J., and CLOSE, J., concur.