OPINION
Defendant-appellant Bituminous Fire Marine Insurance Co. appeals from the October 7, 1999, Judgment Entry of the Stark County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE
In 1997, appellee Power Resources Operating Company, Inc. ("Power Resources") contracted with Empire Excavating Company for the installation of a natural gas pipeline in Geauga County, Ohio. After the pipeline was completed in November or December of 1997, one of the welds on the pipeline failed, causing a portion of the pipeline to rupture and natural gas to be released. The rupture did not cause a fire or damage any other property. Once the pipeline was repaired the next day, the pipeline was placed back into service. As a result of the pipeline rupture, the Public Utilities Commission of Ohio (PUCO) conducted an investigation in July of 1998 to determine whether appellee Power Resources had complied with the natural gas pipeline safety (GPS) standards. After radiographic testing was done in August of 1998, it was discovered that all 13 welds tested were defective. PUCO specifically found in an "Opinion and Order" dated September 24, 1998, that appellee Power Resources had failed to adhere to GPS standards in the construction of the pipeline and that appellee Power Resources "did not even include in its construction bid the GPS requirements." Based on appellee Power Resources' "very severe" violations of state and federal pipeline safety regulations, PUCO ordered that the gas pipeline system be shut down and assessed appellee Power Resources $125,000.00. Appellee Power Resources later replaced the pipeline at a cost of $256,000.00. On October 27, 1998, appellee Power Resources filed a complaint for breach of contract, negligence and fraudulent misrepresentation against Empire Excavating Company, George W. Kelly, II dba Empire, Inc. and Environmental Exploration Co. in the Stark County Court of Common Pleas (Case No. 1998 CV 2023). A first amended complaint was later filed by appellee Power Resources. Appellee Power Resources, in its amended complaint, alleged that it entered into a contract with the above parties for the construction of a natural gas pipeline and that such parties: (1) failed to construct the pipeline in accordance with PUCO welding standards and to use certified or qualified welders; (2) negligently performed certain welding work in the construction of the pipeline; and (3) misrepresented that they were qualified to execute the contract. The amended complaint further alleged that the welds were not in compliance with the construction contract. Appellee Power Resources specifically sought damages incurred as a result of the replacement of the pipeline, including damages for loss of use while the pipeline was being replaced and lost profits. While, in an "Answer, Counterclaim and Third Party Complaint "filed on December 10, 1998, Environmental Exploration and George W. Kelly, II denied having any contractual involvement with appellee Power Resources, Empire denied liability and asserted various defenses and counterclaims against appellee Power Resources. At all relevant times, Empire Excavating Company and Environmental Exploration were the named insureds under a commercial lines insurance policy issued by appellant Bituminous Fire Marine Insurance Co. ("Bituminous"). The policy of insurance issued by appellant Bituminous (Policy No. CLP 2 289 205), which covered the period from April 1, 1997, through April 1, 1998, provided commercial general liability insurance coverage. After receiving appellee Power Resources' complaint against them, Empire Excavating Company and Environmental Exploration forwarded a copy of the same to appellant Bituminous and demanded that it defend and indemnify them with respect to the complaint. However, pursuant to a letter dated December 4, 1998, from a Bituminous claims manager to counsel for Empire Excavating Environmental Exploration, Bituminous denied that it had a duty to provide coverage and a duty to defend. In its letter, Bituminous specifically stated, in part, as follows: "The complaint, [in Case No. 1998CV2023] in brief summary, makes claim that the natural gas pipeline constructed for Power Resources by the defendants was not properly constructed.
Based on our review we are of the opinion the aforementioned insurance policy will not apply to this claim and law suit.
The aforementioned policy of insurance provides on form CG0001, Commercial General Liability Coverage Form, as follows:
SECTION I — COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against and (sic) "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any occurrence" and settle any claim or "suit" that may result.
Occurrence is defined:
 12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
We are of the opinion a claim for damages arising out of the faulty workmanship is not an accident and therefore no "occurrence" as defined in the policy. If there is lack of an "occurrence" the policy does not apply.
In addition, the following exclusions are contained in the aforementioned form.
2. Exclusions
This insurance does not apply to:
j. Damage to Property
"Property damage" to
 (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
l. Damage to Your Work
 "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
"Your work" is defined"
19. "Your work" means:
 a. Work or operations performed by you or on your behalf; and b. Materials, part or equipment furnished in connection with such work or operations.
"Your work" includes:
 a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and b. The providing of or failure to provide warnings or instructions.
The allegations in the complaint involve damages claimed to the work as defined. Therefore, we are of the opinion the aforementioned exclusions would apply which renders this insurance inapplicable.
Therefore, Bituminous Fire and Marine Insurance Company will not be able to assist any of the defendants in this matter."
In a subsequent letter, appellant Bituminous further advised Empire Excavating and Environmental Exploration that exclusion 2n. under the commercial lines insurance policy barred coverage. Such exclusion provides that insurance coverage does not apply to damages caused by the withdrawal, recall, repair, or replacement of an insured's work product or work from the market or from use due to a known or suspected defect or dangerous condition. Thereafter, on January 11, 1999, Empire Excavating and Environmental Exploration filed a complaint for declaratory judgment in the Stark County Court of Common Pleas (Case No. 1999 CV 00039) against appellant Bituminous and appellee Power Resources. Empire Excavating and Environmental Exploration, in their complaint, sought a "declaration construing and interpreting the provisions of Bituminous Fire Marine Insurance Company Policy No. CLP 2-289-205 and determining whether said policy affords a duty to defend, indemnify and other coverage to Plaintiffs for the claims asserted by Power Resources Operating Company, Inc., in the Stark County Court of Common Pleas, Case No. 1998-CV-2023." An amended complaint adding a bad faith claim against appellant Bituminous was filed, with leave of court, on February 26, 1999. Pursuant to a second amended complaint filed on March 9, 1999, George W. Kelly, II, the President of Environmental Exploration and Empire Excavating, was added as an additional party plaintiff. Appellant Bituminous subsequently filed an answer to the second amended complaint. A motion for partial summary judgment was filed by Environmental Exploration and Empire Excavating on March 11, 1999. The two, in their motion, argued in part that the "claim that the pipeline unexpectedly blew up within a short time after being placed into service meets the generally accepted definition of an accident or an event and is therefore included in the policy definition of an "occurrence" which will trigger coverage." Environmental Exploration and Empire Excavating, in their motion, also argued that none of the policy provisions cited by Bituminous in its letters denying coverage and a defense were supportable under Ohio law. Appellant Bituminous, on May 28, 1999, filed a cross motion for summary judgment and response to the motion for partial summary judgment to which Empire Excavating, Environmental Exploration and George Kelly, II responded on June 14, 1999. Supplemental briefs addressed to both motions for summary judgment were later filed. While the above coverage lawsuit was pending, a settlement agreement was entered into on or about April 23, 1999, by and between Power Resources, Empire Excavating, Environmental Exploration and George W. Kelly, II in the underlying case (Case No. 1998 CV 2023). Pursuant to the terms of the settlement agreement, appellee Power Resources agreed to dismiss with prejudice all claims against Environmental Exploration and Kelly in Case No. 1998 CV 2023. In turn, a consent judgment was granted in favor of appellee Power Resources and against Empire Excavating in the amount of $970,000.00. In addition, appellee Power Resources covenanted that it would take no action against Empire Excavating, Environmental Exploration or Kelly to collect the judgment, but that its right to recovery of the judgment would be limited to filing a supplemental petition against appellant Bituminous. Subsequently, on June 24, 1999, appellee Power Resources filed a supplemental petition against appellant Bituminous in Case No. 1998 CV 2023 pursuant to R.C.3929.06 requesting that the trial court order appellant Bituminous "to satisfy the judgment against its insured in the amount of $970,000.00 together with interest . . ." On August 5, 1999, appellee Power Resources filed a motion for summary judgment seeking an order from the trial court "declaring that there is coverage and that Bituminous Insurance Company has the duty to indemnify the Plaintiffs for any judgments rendered in connection with the underlying litigation . . ." A brief in opposition to appellee Power Resources' motion for summary judgment was filed by appellant Bituminous on August 13, 1999. On September 2, 1999, appellee Power Resources filed a supplemental brief in support of its motion for summary judgment. Reply briefs were filed by appellant Bituminous on September 21, 1999 and by appellee Power Resources on October 4, 1999. Pursuant to a Judgment Entry filed on October 7, 1999, the trial court granted the motions for summary judgment filed by appellee Power Resources and by Empire Excavating, Environmental Exploration and George W. Kelly, II while denying the motion for summary judgment filed by appellant Bituminous. The trial court specifically found that since appellant Bituminous had failed to prove that the consent judgment was procured through fraud or collusion, appellant Bituminous was bound by the consent decree and was liable for $970,000.00, the amount of the consent judgment. The trial court, in its entry, further stated as follows: "Assuming, arguendo, that Bituminous was not bound by the consent judgment, this Court still finds that insurance coverage and a duty to defend existed. Specifically, the Court finds the contract is clear and unambiguous. Subcontractors performed the welding on behalf of Plaintiffs. The project was not on the premises of Plaintiffs and was completed before the rupture occurred. Therefore, this Court finds that this property damage is included in the "products-completed operations hazard" exception to the Section 2.j.(6) exclusion of the insurance policy." It is from the trial court's October 7, 1999, Judgment Entry that appellant prosecutes its appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED IN SUSTAINING POWER RESOURCES'S MOTION FOR SUMMARY JUDGMENT AND DECLARING THAT BITUMINOUS IS LIABLE FOR THE FULL AMOUNT OF THE CONSENT JUDGMENT IN THE UNDERLYING CASE.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED IN SUSTAINING POWER RESOURCES'S AND THE INSUREDS' MOTIONS FOR SUMMARY JUDGMENT BASED ON ITS CONCLUSION THAT BITUMINOUS IS BOUND BY THE CONSENT JUDGMENT IN THE UNDERLYING CASE AND IS COLLATERALLY ESTOPPED FROM LITIGATING ITS LIABILITY UNDER THE POLICY.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ERRED IN SUSTAINING THE INSUREDS' AND POWER RESOURCES'S MOTIONS FOR SUMMARY JUDGMENT AND DENYING BITUMINOUS'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF COVERAGE.
 STANDARD OF REVIEW
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(c) states in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
It is based upon this standard we review appellant's assignments of error. For purposes of clarity, we shall address appellant's assignments of error out of order.
 II
Appellant Bituminous, in its second assignment of error, argues that the trial court erred in sustaining appellee Power Resources's Motion for Summary Judgment and the Motion for Summary Judgment filed by Environmental Exploration, Empire Excavating, and George W. Kelly, II. The trial court in the case sub judice, as memorialized in a Judgment Entry filed on October 7, 1999, held that pursuant to the doctrine of collateral estoppel, the consent judgment in Case No. 1998 CV 2023 was binding on appellant Bituminous. Appellant contends that the consent judgment in Case No. 1998 CV 2023 did not "defeat Bituminous's right to summary judgment on the issue of coverage." We agree. The doctrine of collateral estoppel, which is also known as issue preclusion, precludes a party from relitigating an issue of fact or law when the following elements are met: (1) The party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit.
See Hicks v. De La Cruz (1977), 52 Ohio St.2d 71, 74-75 and Howell v. Richardson (1989), 45 Ohio St.3d 365. Because appellant Bituminous in the case sub judice was given notice and an opportunity to defend in the underlying action (Case No. 1198 CV 2023), and declined to do so based on an asserted lack of coverage, it can be argued that appellant Bituminous is collaterally estopped from "attacking the factual and legal conclusions of the trial court in the underlying action". ALD Concrete Grading v. Chem-Masters Corp. (1996), 111 Ohio App.3d 759,764. Additionally, one can argue that appellant Bituminous cannot contest the effect of the consent judgment in the underlying case since "[u]nder Ohio Law, a consent judgment has the same binding effect as one entered by the court after summary adjudication or full trial." Columbus v. Alden E. Stilson 
Assoc. (1993), 90 Ohio App.3d 608, 614-615. Thus, appellant Bituminous, as the result of the consent judgment filed in Case No. 1998 CV 2023, may not be able to relitigate the issue of the liability of Empire Excavating, Environmental Exploration and George w. Kelly, II to appellee Power Resources. However, issues concerning the application and interpretation of the terms, conditions and exclusions of the insurance policy issued by appellant Bituminous to Empire Excavating and Environmental Exploration in relation to the consent judgment entered in Case No. 1998 CV 2023, the underlying action, were not addressed in such action. Therefore, even if we were to conclude that appellant Bituminous is bound by the consent entry filed in Case No. 1998 CV 2023, appellant Bituminous is not barred by the doctrine of collateral estoppel from litigating issues relating to coverage. See ALD Concrete, supra. In other words, Power Resources and Empire Excavating and Environmental Exploration settled their differences and agreed on the amount by which Power Resources was damaged by Empire Excavating and Environmental Exploration, but the issue of whether Empire's insurance covers such damages was not decided. Based on the foregoing, we find that the trial court erred in sustaining appellee Power Resources's Motion for Summary Judgment and the Motion for Summary Judgment filed by Empire Excavating, Environmental Exploration and George W. Kelly, II. Appellant's second assignment of error is, therefore, sustained.
 III
Appellant Bituminous, in its third assignment of error, argues that the trial court erred in sustaining the motions for summary judgment filed by appellee Power Resources and by Empire Excavating, Environmental Exploration and Kelly while denying that filed by appellant Bituminous on the issue of coverage. We agree. We find that there is no coverage under the commercial lines insurance policy issued by appellant Bituminous to Empire Excavating and Environmental Exploration since the damages sought by appellee Power Resources in the case sub judice were not the result of an "occurrence" as such term is defined in the policy. For such reason, appellant Bituminous' third assignment of error is sustained. The commercial lines policy (Policy No. CLP 2 289 205) issued by appellant Bituminous to Environmental Exploration and Empire Excavating states, in relevant part, as follows:
SECTION I — COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
 1. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
 b. This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and (2) The "bodily injury" or "property damage" occurs during the policy period.
An "occurrence" is defined in Section V of the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." As noted by the court in Royal Plastics v. State Auto. Mut. Ins. Co., "[t]his language is `clear and plain, something only a lawyer's ingenuity could make ambiguous.'" Royal Plastics v. State Auto. Mut. Ins. Co. (1994), 99 Ohio App.3d 221, 225, citing Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 664. Accordingly, this court must review the allegations in the complaint filed by Empire Excavating, Environmental Exploration and George W. Kelly, II against appellant Bituminous and appellee Power Resources in the case sub judice to determine whether any of the claims contained in such complaint potentially or arguably fall within the scope of the insurance policy coverage. Zanco, Inc. v. Michigan Mut. Ins. Co. (1984), 11 Ohio St.3d 114. The second amended complaint filed against appellant Bituminous and appellee Power Resources in the case sub judice specifically states, in part, as follows: "On or about October 27, 1998, Defendant Power Resources Operating Company, Inc., filed litigation in this court asserting inter alia breach of contract, negligence and fraudulent misrepresentation claims against Plaintiffs and seeking compensatory damages. Power Resources alleges inter alia that certain welding work performed by or on behalf of Environmental Exploration Company and/or Empire Excavating Company, dba Empire, Inc., was done negligently and not in conformity with applicable industry standards and that, as a result of such negligence, Power Resources has incurred damages. Said action is styled Power Resources Operating Company, Inc. v. George W. Kelly, II, dba Empire, Inc., et al. Stark County Common Pleas Court, Case No. 1998-CV-2023. A copy of said First Amended Complaint is attached hereto as Exhibit "B" and incorporated herein by reference."
In turn, the first amended complaint referenced above alleges that Empire Excavating, Environmental Exploration and George W. Kelly, II failed to construct the pipeline in accordance with PUCO welding standards, to properly supervise the construction of the same, and to use certified and qualified welders. The first amended complaint further states, in relevant part, as follows: 5. As a result of improper welds, a portion of the pipeline blew up approximately five (5) days after it went into service. 6. During the subsequent investigation by "PUCO", of the thirteen (13) welds inspected all thirteen failed the inspection. 7. As a result of the failed inspection, "PUCO" immediately shut down the project and stated that the entire pipeline had to be replaced, thereby rendering the pipeline useless to the Plaintiffs and its customers. 8. In order for Plaintiff to mitigate its damages to preclude further loss of customers, this Plaintiff had to replace said line with a smaller line. 9. As a result of the Defendants' breach, this Plaintiff has suffered damages in the amount of Five Hundred Thousand and No/100 Dollars ($500,000.00) for expenses incurred in installing the line rendered useless. Thirty Thousand and No/100 Dollars ($30,000.00) in loss of use while the line was being replaced, One Hundred Fifty thousand and No/100 Dollars ($150,000.00) in lost profits from customers who terminated their contract with the Plaintiff."
Clearly, the complaint in the case sub judice, when considered in connection with the complaint in1998 CV 2023, the underlying case, alleges faulty workmanship in the construction of the pipeline. As noted by appellant in its brief, appellee Power Resources, in its complaint in Case No. 1998 CV 2023, which was incorporated by reference into the complaint filed in the case sub judice, did not seek recovery for damages caused by the ruptured weld. Rather, appellee Power Resources sought damages for expenses it incurred, including loss of use, lost profits and replacement costs, after the pipeline was later shut down by PUCO as a result of its discovery that all 13 welds were defective. "It is well established that a general commercial liability policy does not cover claims of negligent manufacture . . ." Royal Plastics, supra. at 226, citing Hamilton Die Cast, Inc. v. United States Fid. Guar. Co. (1975), 508 F.2d 417 (applying Ohio law). See also Heile v. Herrmann (Dec. 17, 1999), Hamilton App. No. C-990076, unreported, Rombough v. Angeloro (July 31, 1998), Lake App. No. 97-L-131, unreported, Pursell Const. v. Hawkeye -Security Co. (1999), 596 N.W.2d 67 and McAllister v. Peerless Ins. Co. (1984), 474 A.2d 1033, 1036-1037 (holding that a general comprehensive liability policy does not provide coverage for claims against an insured for the repair of defective workmanship that damaged, as here, only the resulting work product.) Courts, such as the ones cited above, generally have held that there is no coverage under a general comprehensive liability policy since defective workmanship does not constitute an "accident" and since, without an "accident", there can be no occurrence as such term is defined in the insurance policy. For such reason, insurance coverage under general commercial liability policies is restricted to claims of negligent manufacture resulting in an occurrence. Reynolds Plastics, supra. There is no claim in the case sub judice that the defective workmanship on the pipeline caused damage to any other property than the work product. Rather, the damages alleged by appellee Power Resources in the case sub judice all relate to Empire Excavating or its subcontractors' own work, not to any consequential damages deriving from such work. Accordingly, since there was, therefore, no property damage caused by an "occurrence", which the general commercial liability insurance policy in this matter defines as an "accident", appellee was not entitled to coverage under such policy. As was noted by the court in United States Fid. Guar. Corp. v. Advance Roofing Supply Co., Inc. (1989), 788 P.2d 1227, 1233. [W]e recognize that there are some authorities that appear to conclude that the mere showing of faulty work is sufficient to bring a claim for resulting damages (of whatever nature) within policy coverage. . . . In our opinion, these authorities disregard the fundamental nature of a comprehensive general liability policy . . . and ignore the policy requirement that an occurrence be an accident. If the policy is construed as protecting a contractor against mere faulty or defective workmanship, the insurer becomes a guarantor of the insured's performance of the contract, and the policy takes on the attributes of a performance bond. We find these authorities unpersuasive."
We also agree with the court in Heile, supra. that: "In particular, [general commercial liability] policies such as the one here are not intended to insure "business risks" — risks that are the "normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage." Courts generally conclude that the policies are intended to insure the risks of an insured causing damage to other persons and their property, but that the policies are not intended to insure the risks of an insured causing damage to the insured's own work. In other words, the policies do not insure an insured's work itself; rather, the policies generally insure consequential risks that stem from the insured's work."
Since there was no coverage under the general commercial liability policy issued by appellant, Bituminous, it is unnecessary to determine whether any of the exclusions to coverage contained in such policy apply. To conclude, we find that the trial court, erred in sustaining the motions for summary judgment filed by appellee Power Resources and by Empire Excavating, Environmental Exploration, and George W. Kelly, II while denying that filed by appellant Bituminous. Based on the above analysis, we find that appellee Power Resources claims in the case sub judice were not arguably or potentially covered by the general commercial liability insurance policy issued by appellant Bituminous. Appellant's third assignment of error is, therefore, sustained. I Appellant Bituminous, in its first assignment of error, contends that the trial court erred in sustaining appellee Power Resource's Motion for Summary Judgment and declaring that appellant is liable for the full amount of the consent judgment in Case No. 1998 CV 2023, the underlying case. Appellant Bituminous specifically argues that appellee Power Resource's covenant not to execute any portion of the consent judgment in the underlying case against Empire Excavating, Environmental Exploration and George W. Kelly, II, exonerates appellant from any liability for the consent judgment. Based on this Court's disposition with respect to appellant's second and third assignments of error, appellant's first assignment of error is moot. The judgment of the Stark County Court of Common Pleas is reversed. This matter is remanded to the trial court which, in accordance with this opinion, is ordered to enter summary judgment in favor of appellant Bituminous Fire Marine Insurance Co. on the issue of coverage. By Edwards, J.and Reader, V. J. concur. Hoffman, P.J. concurs separately.
Hoffman, P.J., concurring
I concur in the majority's analysis and disposition of appellant's second assignment of error. I further concur in the majority's disposition of appellant's third assignments of error. However, I do so for a different reason. The majority concludes "We find that there is no coverage under the commercial lines insurance policy issued by appellant Bituminous to Empire Excavating and Environmental Exploration since the damages sought by appellee Power Resources in the case sub judice were not the result of an `occurrence' as such term is defined in the policy." (Majority Opinion at 17.) I disagree. The fact one weld on the pipeline "blew" would, by most people, be considered an "occurrence" within the common meaning of that term. Nevertheless, appellant found it necessary to specifically define the term "occurrence" in its policy as ". . . an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Even if we were to assume the fact one weld blew was not an "accident" — an assumption open to debate because "accident" is not defined in the policy — the fact the PUCO discovered another 13 welds were defective would constitute a continuous or repeated exposure to substantially the same general harmful condition; i.e., one or more of the other 13 welds might likewise "blow." I believe under the scenario presented in this case, there was an "occurrence." The trial court properly concluded Exclusion 2j(6) did not apply to the facts herein because the "products-completed operations hazzard" exception to the 2j(6) exclusion applied. However, the analysis does not stop there. I agree with appellant its ability to assert Exclusion 2n has not been waived. The case relied upon by appellee to support its waiver argument (Turner v. Central Local School District (1999), 85 Ohio St.3d 95), is procedurally significantly different than that presented herein. I believe Exclusion 2n precludes coverage in this case. Accordingly, I concur in the majority's decision to sustain appellant's third assignment of error. Finally, as it pertains to appellant's first assignment of error, given the disposition of appellant's second and third assignments of error, I agree with the majority any discussion of the first assignment of error is rendered moot.
JUDGE WILLIAM B. HOFFMAN