NYE, Appellant,

v.

OHIO BOARD OF EXAMINERS OF ARCHITECTS, Appellee.

[Cite as *Nye v. Ohio Bd. of Examiners of Architects,*
165 Ohio App.3d 502, 2006-Ohio-948.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–833.

Decided March 2, 2006.

504

[REDACTED]

Clark, Perdue, Arnold & Scott Co., L.P.A., James E. Arnold, and Glen R. Pritchard, for appellant.

Jim Petro, Attorney General, and Barry D. McKew, Assistant Attorney General, for appellee.

---

BRYANT, Judge.

{¶ 1} Appellant, Mark A. Nye, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of the state of Ohio Board of Examiners of Architects that revoked appellant's certificate of qualification to practice architecture in Ohio. Appellant assigns a single error:

> The trial court erred in failing to reverse the decision of the State of Ohio Board of Examiners of Architects because the Board erroneously deemed Appellant's admissions, contained within a confidential agreement entered into in connection with the settlement of an unrelated civil matter, to be binding and irrefutable evidence of profession misconduct.

Because the board did not err in applying the doctrine of collateral estoppel, we affirm.

{¶ 2} In May 1999, Redeemer Lutheran Church ("RLC") entered into contracts with CM Architects, Inc. ("CMA") and CM Architects & Master Builders, Inc. ("CMB"), corporations that appellant owned and operated. Pursuant to the contracts, appellant was to design, improve, and expand the church for a total cost of $638,000. Construction began in June, and over the next few months, RLC paid appellant $532,583, or 80 percent of the contract price. In December, a dispute about the progress payment schedule prompted CMB to pull its workers and equipment from the construction site.

{¶ 3} RLC filed two lawsuits against appellant, CMA, and CMB in the Franklin County Court of Common Pleas, alleging fraudulent transfer of assets, misstatements made with fraudulent intent, and fraudulent actions involving the creation of corporations for illegal purposes and breach of contract. The cases were consolidated, and in December 2002, RLC and appellant entered into a settlement agreement in which appellant admitted to all the allegations contained in RLC's two complaints. Particularly relevant here, appellant specifically admitted to fraud, fraudulent transfers, and conduct preventing the discharge of debt under the bankruptcy code.

{¶ 4} The settlement agreement, by its very terms and by court order, was incorporated into an agreed judgment entry that the common pleas court issued. In addition to incorporating the terms of the settlement agreement, the entry awarded RLC $110,000 on its claims against appellant and expressly stated that the entry "constitutes a finding of fact and law regarding the substantive merits of each of [RLC's] underlying claims."

{¶ 5} On August 6, 2003, RLC filed a complaint with the board requesting that the board revoke or suspend appellant's license to practice architecture because appellant had committed various acts of fraud, deceit, and misconduct in renovating RLC's church. After the board received RLC's complaint against appellant, it began an investigation into the allegations and subpoenaed the settlement agreement. Based exclusively on the information contained in the settlement agreement, the board notified appellant that the board was taking action against his certificate of qualification to practice architecture.

{¶ 6} Pursuant to R.C. Chapter 119, appellant requested and received an administrative hearing. On June 3, 2004, and July 13, 2004, the hearing officer conducted a hearing that included the testimony of Chad Holland, the board's investigator, Allan Debelak, Pastor of RLC, and appellant. Among the documentary evidence admitted during the hearing were the agreed judgment entry, the settlement agreement, and the complaints that RLC had filed against appellant in the common pleas court.

{¶ 7} Based on the evidence, the hearing officer issued a report and Recommendation in which he found that appellant had violated Ohio Adm.Code 4703–3–07(E)(3) by failing to act in the best interests of RLC, by falsely inflating the assets and net worth of his architecture company, by sheltering his assets to avoid the reach of RLC, and by failing to abide by the terms of the settlement agreement. The hearing officer further concluded that appellant's actions violated R.C. 4703.15(B) and 4703.151.

{¶ 8} Premised on the noted violations, the hearing officer recommended that the board suspend appellant's architecture license indefinitely and for a period of not less than one year, but to hold in abeyance all but 30 days of that suspension provided appellant complete continuing education courses and honor his restitution agreement with RLC. The board issued an order adopting the findings of fact, conclusions of law, and summary of conclusions in the hearing officer's report and recommendation, but the board rejected the hearing officer's recommendation and instead revoked appellant's license to practice architecture.

{¶ 9} Pursuant to R.C. 119.12, appellant appealed the board's order to the Franklin County Court of Common Pleas. The common pleas court affirmed the board's order, finding it to be supported by reliable, probative, and substantial evidence and in accordance with law. Appellant appeals, contending that the common pleas court should have reversed the board's order.

{¶ 10} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 110–111, 17 O.O.3d 65, 407 N.E.2d 1265. The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" *Lies v. Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quoting *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency generally are not conclusive. *Conrad,* 63 Ohio St.2d at 111, 17 O.O.3d 65, 407 N.E.2d 1265.

{¶ 11} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, rehearing denied, 67 Ohio St.3d 1439, 617 N.E.2d 688. The appellate court is to determine only whether the common pleas

court abused its discretion. Id. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court. *Pons*, supra. An appellate court does, however, have plenary review of purely legal questions. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, 784 N.E.2d 753, at ¶ 15.

{¶ 12} Here, appellant contends that the common pleas court erred in affirming the board's order that improperly applied the doctrine of res judicata and deemed appellant's admissions in the settlement agreement in the previous civil matter to be conclusively binding evidence in the proceedings before the board. Because the applicability of res judicata is a question of law, this court utilizes a de novo standard of review. *Prairie Twp. Bd. of Trustees v. Ross*, Franklin App. No. 03AP–509, 2004-Ohio-838, 2004 WL 344158, at ¶ 12.

{¶ 13} The doctrine of res judicata includes two separate concepts: (1) claim preclusion, historically called estoppel by judgment, and (2) issue preclusion, traditionally called collateral estoppel. *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226. Relevant to this appeal, the doctrine of collateral estoppel provides that an issue or a fact that was fairly, fully, and necessarily litigated and determined in a prior action may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, at ¶ 16. Collateral estoppel applies when (1) the fact or issue was actually and directly litigated in the prior action, (2) the fact or issue was passed upon and determined by a court of competent jurisdiction, and (3) the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action. *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917, citing *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, paragraph two of the syllabus.

{¶ 14} Before we address the specifics of appellant's argument, we first note that the agreed judgment entry was issued by the Franklin County Court of Common Pleas, a court of competent jurisdiction. Moreover, because appellant's factual admissions were incorporated into the agreed judgment entry, RLC's civil action is deemed actually litigated and determined. *Columbus v. Alden E. Stilson & Assoc.* (1993), 90 Ohio App.3d 608, 616, 630 N.E.2d 59; *Horne v. Woolever* (1959), 170 Ohio St. 178, 10 O.O.2d 114, 163 N.E.2d 378; *Sponseller v. Sponseller* (1924), 110 Ohio St. 395, 144 N.E. 48; cf. *Kissinger v. Pavlus*,

Franklin App. No. 01AP–1203, 2002-Ohio-3083, 2002 WL 1013085, at ¶ 11 (finding collateral estoppel does not apply when issue was resolved through settlement without a final judgment).

{¶ 15} Appellant nonetheless claims that some of the requirements for applying collateral estoppel are absent on this record. While acknowledging the facts he admitted in the agreed judgment entry, appellant contends that the board misapplied the doctrine of collateral estoppel because the board was not a party to the civil action giving rise to the admissions. Mutuality of parties generally is a requisite to collateral estoppel, so that collateral estoppel operates only when all of the parties to the present proceedings were bound by the prior judgment. In order to preclude either party from relitigating an issue, a judgment must be preclusive upon both. *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978, paragraph one of the syllabus. *Goodson,* however, recognized a narrow exception that relaxes the mutuality requirement in certain circumstances. See *Hicks v. De La Cruz* (1977), 52 Ohio St.2d 71, 6 O.O.3d 274, 369 N.E.2d 776.

{¶ 16} In *Hicks,* the Ohio Supreme Court used nonmutual offensive collateral estoppel to preclude the city of Cincinnati from relitigating the issue of its ownership and control of a hospital when that issue was determined in a prior case in which the city was a party. More specifically, in *Hicks,* the city sought to argue that it had immunity from liability because Cincinnati General Hospital was a state-owned facility. Yet in the prior case, the city took the opposite position and argued, as the court found, that the city owned, operated, and controlled the hospital. Id. at 74, 6 O.O.3d 274, 369 N.E.2d 776. Considering those facts, the Supreme Court in *Hicks* held that when a party defendant clearly had its day in court on the specific issue brought into litigation within the later proceeding, the nonparty plaintiff could rely upon the doctrine of collateral estoppel to preclude relitigation of that specific issue. Id., *Goodson,* 2 Ohio St.3d at 200, 2 OBR 732, 443 N.E.2d 978. *Goodson* recognized such an exception to the general requirement of mutuality to be a proper rule "where justice would reasonably require it." Id. at 199, 2 OBR 732, 443 N.E.2d 978.

{¶ 17} Here, like the city in *Hicks,* appellant seeks to contest in his hearing before the board the validity of the facts and specific issues contained in the agreed judgment entry when, in the previous civil action, appellant freely admitted those facts. Although the previous civil litigation also established appellant's liability, appellant's ultimate liability in the previous action was not the issue in the board's administrative determination; instead, the board applied collateral estoppel to the "operative facts" from the prior civil litigation. See *Goodson,* 2 Ohio St.3d at 200, 2 OBR 732, 443 N.E.2d 978 (concluding nonmutual

offensive collateral estoppel appropriate when related to a previously litigated specific issue but not when applied to the issue of liability).

{¶ 18} Because appellant did not lack the full and fair opportunity to litigate the facts in the prior civil litigation, and because appellant was not precluded from litigating whether the admitted facts from the prior civil litigation warranted the revocation of his architectural license, the trial court did not err in affirming the board's use of offensive collateral estoppel to give conclusive effect to appellant's prior admissions, even though the board was not a party in the prior civil litigation. To find otherwise would be to allow a party to manipulate the judicial system in a manner *Goodson* deemed inappropriate.

{¶ 19} Moreover, since *Goodson*, the Ohio Supreme Court has expanded the mutuality-of-parties requirement to include not only the parties and their privities but also a mutuality of interest, including an identity of interest in the desired result. *Brown v. Dayton* (2000), 89 Ohio St.3d 245, 248, 730 N.E.2d 958. Here, the board's administrative action flowed from RLC's complaint filed with the board on grounds factually similar, if not identical, to RLC's civil action against appellant. Premised on that complaint, the board, aligned with RLC, charged appellant with professional misconduct and sought disciplinary action against appellant on RLC's claim. *See Fort Frye Teachers Assn. v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 396, 692 N.E.2d 140 (finding mutuality satisfied when teacher and school board were adversaries in prior civil litigation and in action before State Employment Relations Board initiated by teacher and filed charge against school board). Thus, in both the civil litigation and the administrative action, RLC and appellant have been adversaries. In the administrative litigation, RLC and the board had similar interests in ascertaining the precise nature of appellant's conduct and arresting any unprofessional conduct so as to protect RLC and the public as a whole from further professional misconduct. Indeed, in addition to initiating the board's investigation, RLC continued to assist the board in its investigation by submitting the settlement agreement and by testifying on the board's behalf. Given that relationship, the board had sufficient mutuality of interest to be deemed in privity with RLC for the purposes of applying collateral estoppel in this case.

{¶ 20} Appellant, however, notes several exceptions that have caused the Supreme Court to refuse to apply collateral estoppel, even when the mutuality requirement is met. See *State v. Williams* (1996), 76 Ohio St.3d 290, 667 N.E.2d 932; *Hicks,* supra. In particular, collateral estoppel will not bar the relitigation of an otherwise precluded issue if "[t]here is a clear and convincing need for a new determination of the issue * * * because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or * * * because the party sought to be precluded, as a result

of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Williams,* 76 Ohio St.3d at 295, 667 N.E.2d 932.

{¶ 21} Under the perimeters of *Williams,* appellant contends that he should be able to relitigate the admitted facts ·because (1) he thought the settlement agreement would be kept confidential and he did not anticipate its use in prospective litigation and (2) he did not have an incentive to fully litigate the civil action because he was under considerable financial pressure to settle.

{¶ 22} Initially, although the settlement agreement generally was confidential by its terms, the agreement included a clause that allowed for disclosure if RLC or appellant "require[s] use of this Agreement for evidence or otherwise in litigation, bankruptcy proceeding or other court proceeding." The clause thus allows either party to use the terms of the agreement, including appellant's admissions, in subsequent proceedings such as those before the board. At the same time, the clause serves notice of the settlement agreement's potential to be used in future litigation. Because the very terms of the settlement agreement expressly and objectively refute appellant's subjective belief that the agreement was confidential and would not be used in prospective litigation, appellant's first argument is unpersuasive.

{¶ 23} Appellant next claims that financial duress prevented him from fully and vigorously litigating the initial civil action. Appellant's financial duress, however, did not occur "as a result of the conduct of his adversary or other special circumstances." *Williams,* 76 Ohio St.3d at 295, 667 N.E.2d 932. If appellant did not fully litigate RLC's initial lawsuit, the failure to litigate was due to the prospect of significant litigation costs in conjunction with his own personal and professional financial troubles. RLC did not coerce or induce appellant into accepting the terms of the settlement agreement by any improper means; rather, appellant entered into the settlement agreement of his own accord. Appellant's second argument is without merit.

{¶ 24} Because the requirements for collateral estoppel are satisfied and because no recognized policy exception prevents its application, appellant's admissions in the initial civil actions were binding and conclusive upon appellant in the proceedings before the board. Accordingly, for the reasons stated in this opinion, we overrule appellant's single assignment of error and affirm the judgment of the common pleas court.

Judgment affirmed.

PETREE and FRENCH, JJ., concur.