OPINION
{¶ 1} Intervening plaintiff-appellant, Cincinnati Insurance Company, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Gulf Insurance Company, Media Professional Insurance Company, Inc., and Wobar, Inc.
 {¶ 2} The present appeal is the culmination of long-standing litigation that has already been before this court on two occasions: S.E.A., Inc. v. Dunning-Lathrop Assocs. (Dec. 21, 2000), Franklin App. No. 00AP-165, ("S.E.A. I") and S.E.A. v.Dunning-Lathrop Assocs. (Aug. 5, 2004), Franklin App. No. 03AP-1051, ("S.E.A. II"). Much of the procedural and factual history that is fully laid out in our prior decisions is not necessary for resolution of the present appeal, and will only be summarized here to the extent necessary to establish the present posture of the case.
 {¶ 3} Plaintiff S.E.A., Inc., which has not participated in this appeal, and its affiliated companies were in the business of providing services that included fire safety analysis, accident reconstruction, product safety consultation, chemical spill analysis, and environmental sampling and analysis. This litigation arose out of an environmental real estate assessment performed by S.E.A. for its client Titanium Industries, Inc. ("Titanium"). The environmental real estate assessment performed for Titanium by S.E.A. was part of Titanium's due diligence in preparation for the purchase of a business. Titanium would later claim that it has purchased the business in reliance on S.E.A.'s conclusions in the environmental assessment, but that Titanium subsequently discovered undisclosed environmental contamination that cost more than $9.7 million to correct. Titanium sued S.E.A. in Mahoning County asserting, inter alia, negligence in performing the environmental assessment. At the time of the suit, S.E.A. had in effect a $1 million primary errors and omissions policy issued by appellee Gulf Insurance Company ("Gulf"). Appellee Media Professional Insurance Company ("Media"), was the underwriting manager and claims supervisor for this insurance policy, and appellee Wobar, Inc. is the corporate successor to Media. For purposes of this appeal, these three entities occupy the same position and will be collectively referred to as "Gulf" or "appellees." S.E.A. also benefited from further coverage under a $2 million errors and omissions liability insurance policy issued by appellant Cincinnati Insurance Company ("Cincinnati") which, by its explicit terms, was excess insurance above and beyond the $1 million primary policy issued by Gulf.
 {¶ 4} S.E.A. tendered defense of the Mahoning County lawsuit to Gulf, which declined to defend or indemnify. Gulf asserted that its policy issued to S.E.A. did not cover errors or omissions in undertaking environmental real estate assessments such as the one giving rise to Titanium's suit. S.E.A. thereafter undertook its own defense in the Mahoning County lawsuit, but also initiated the present lawsuit in Franklin County against Gulf and S.E.A.'s insurance agency, Dunning-Lathrop Associates, Inc. ("Dunning-Lathrop"), alleging breach of contract, negligence, and bad faith denial of coverage. Cincinnati would eventually join the Franklin County case as an intervening plaintiff seeking recovery from Gulf.
 {¶ 5} The Mahoning County and Franklin County cases proceeded in parallel. Titanium secured a jury verdict totaling nearly $3 million against S.E.A. in Mahoning County, although this judgment was subsequently reversed on appeal. After remand to the Mahoning County Court of Common Pleas, the principal parties to the Mahoning County lawsuit, Titanium and S.E.A., agreed to a settlement with the consent of Cincinnati. The terms of this settlement were then the object of some disagreement between the parties, leading S.E.A. to file before the Mahoning County Court of Common Pleas a motion for "enforcement of settlement agreement." The settlement was consequently reflected in an agreed judgment entry entered by the Mahoning County Court of Common Pleas on May 7, 1999.
 {¶ 6} The settlements between S.E.A., Gulf, Dunning-Lathrop, and Cincinnati are reflected in three documents in the record before us, and parties dispute the relative validity and effect thereof. Two of these documents are appended to the May 7 agreed entry as attachments, Exhibit A and Exhibit B, and the judgment entry specifically refers to Exhibit B, stating that "the settlement agreement * * * annexed hereto as exhibit B is valid and enforceable." A slightly modified version of Exhibit A, which is referred to by the parties as Exhibit C, was later executed by the parties on May 26, 1999.
 {¶ 7} Exhibit B is a settlement agreement providing that S.E.A. would confess judgment for $8 million in favor of Titanium, and that Titanium would forego execution against S.E.A. above the $2 million received from S.E.A.'s insurer, Cincinnati, on the condition that S.E.A. assign to Titanium all claims it had against Gulf, including those currently pursued in the Franklin County lawsuit. Exhibit A was a separate settlement agreement and release, dated August 1998, and signed only by S.E.A., reflecting the confession of judgment from Exhibit B and payment by Cincinnati to Titanium of $2 million of that amount, but, in addition, providing that Cincinnati would retain the right to pursue Gulf for bad faith failure to provide coverage to S.E.A. against the Titanium claim "to the extent that such right * * * is vested in Cincinnati Insurance Company by virtue of its payment to Titanium."
 {¶ 8} On May 26, 1999, Dunning-Lathrop, Cincinnati, S.E.A., and Titanium executed the modified version of Exhibit A that would become Exhibit C. Paragraph 14 of this May 26 agreement indicated that it "superseded" Exhibit A of the May 7 judgment but did not otherwise affect the terms of that judgment or Exhibit B thereto. The later version does not otherwise materially alter the terms of the settlement reflected in Exhibit A.
 {¶ 9} In the meantime, the Franklin County lawsuit had progressed in its initial appeal to this court, in which we affirmed the trial court's judgment in part and remanded the matter with certain surviving claims for further proceedings. During that remand, Cincinnati filed its motion to intervene and its intervening complaint against Gulf. The complaint stated that under the terms of the Mahoning County settlement agreement, Cincinnati, under its umbrella policy, paid Titanium $2 million, and based on that payment Cincinnati alleged claims against Gulf as assignee or subrogee of S.E.A.'s claims against Gulf.
 {¶ 10} On October 14, 2002, Gulf filed a motion for judgment on the pleadings as to the claims in Cincinnati's intervening complaint, asserting that they were entirely derivative of S.E.A.'s claims against Gulf, which had been assigned to Titanium in the May 7, 1999 Mahoning County judgment. In the interim, S.E.A. dismissed with prejudice all its claims against Gulf.
 {¶ 11} On December 30, 2002, the trial court granted judgment on the pleadings to Gulf on Cincinnati's intervening complaint. The matter was then appealed to this court, and in S.E.A. II,
we found that the trial court had improperly granted judgment on the pleadings because the trial court had looked to documents and materials outside of the pleadings in concluding that Gulf was entitled to judgment. We remanded the matter to the trial court, which has now entered summary judgment in favor of Gulf on essentially the same grounds for which it previously granted judgment on the pleadings, that is, that Cincinnati does not have the right to pursue the derivative claims that it asserts it holds as the assignee or subrogee of S.E.A.
 {¶ 12} Cincinnati has timely appealed and raises the following three assignments of error:
ASSIGNMENT OF ERROR NO. 1:
THE TRIAL COURT ERRED IN GRANTING APPELLEE MEDIA/GULF'S MOTION FOR SUMMARY JUDGMENT FILED ON OCTOBER 5, 2004 BASED UPON THE CLAIM THAT CINCINNATI INSURANCE HAD NO ASSIGNED RIGHT TO PURSUE CLAIMS AGAINST GULF UNDERWRITERS INSURANCE COMPANY, MEDIA PROFESSIONAL INSURANCE, INC., AND WOBAR, INC.
ASSIGNMENT OF ERROR NO. 2:
THE TRIAL COURT ERRED IN GRANTING APPELLEE MEDIA/GULF'S MOTION FOR SUMMARY JUDGMENT FILED ON OCTOBER 5, 2004 BASED UPON THE CLAIM THAT CINCINNATI INSURANCE HAD NO EQUITABLE CLAIMS AGAINST GULF UNDERWRITERS INSURANCE COMPANY, MEDIA PROFESSIONAL INSURANCE, INC., AND WOBAR, INC.
ASSIGNMENT OF ERROR NO. 3:
THE TRIAL COURT ERRED IN GRANTING APPELLEE MEDIA/GULF'S MOTION FOR SUMMARY JUDGMENT FILED ON OCTOBER 5, 2004 BASED UPON THE CLAIM THAT CINCINNATI INSURANCE HAD NO CLAIMS FOR ATTORNEY FEES AGAINST GULF UNDERWRITERS INSURANCE COMPANY, MEDIA PROFESSIONAL INSURANCE, INC., AND WOBAR, INC.
 {¶ 13} We initially note this matter was decided in the trial court by summary judgment, which under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion.Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 8 O.O.3d 73,375 N.E.2d 46. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.
 {¶ 14} An appellate court's review of summary judgment is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 588, 641 N.E.2d 265; Patsy Bard v. Society Nat. Bank, nkaKeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co. (1995),106 Ohio App.3d 440, 445, 666 N.E.2d 316.
 {¶ 15} Addressing Cincinnati's first assignment of error, is apparent that the crux of this case is the interaction between, and different interpretation given by the parties to, the settlement agreement reflected in Exhibit B, the two versions of the further agreement reflected in Exhibits A and C, and the May 7, 1999 judgment entered by the Mahoning County Common Pleas Court. Cincinnati asserts that Exhibit C, executed on May 26, assigned to Cincinnati the rights of its insured, S.E.A., to pursue contractual and bad faith claims against Gulf. Appellees argue to the contrary that, first, S.E.A. had previously assigned in Exhibit B, adopted and incorporated into the Mahoning County Court of Common Pleas' May 7, 1999 agreed entry, all such rights to Titanium, and therefore had no such rights left to assign to Cincinnati, and, second, the May 26 version of the settlement explicitly acknowledges the prior assignment of such rights by stating that it would not affect the terms of Exhibit B and the May 7 consent decree.
 {¶ 16} We find, as the Franklin County Court of Common Pleas did, that there remains no material issue of fact in the present case and that based upon the language of the two settlement agreements, regardless of whether Exhibit A or Exhibit C is taken as the effective version, S.E.A. had previously assigned all of its rights against Gulf to Titanium, and had no such rights to convey to Cincinnati thereafter. Moreover, even had S.E.A. not assigned its claims against Gulf to Titanium through the May 7 consent decree and attached settlement agreements, the May 26 agreement does not contain an explicit assignment of such rights from S.E.A. to Cincinnati, but merely acknowledges any right Cincinnati may hold by virtue of its payments to Titanium under the umbrella policy. Because we further find, as did the trial court, that Cincinnati, as provider of excess coverage, did not pay on a risk properly assumed by Gulf, but rather paid on the risk that it had normally assumed as an excess carrier, we conclude that Cincinnati holds no rights as an equitable subrogee.
 {¶ 17} Paragraph two of the settlement agreement incorporated by reference as Exhibit B into the May 7, 1999 judgment entry provided as follows:
S.E.A. hereby assigns to Titanium all right and interest in all proceedings, judgments, attorney's fees, interest, coverage, claims, settlements, entitlements or proceeds of any kind that S.E.A. had, has or may have at any time with respect to Gulf including without limitation all proceeds, settlements, judgments, choses in lawsuit or other consideration arising out of S.E.A., Inc. et al. v. Dunning-Lathrop Associates, Inc. etal, Case No. 93CVH-09-6556 (Franklin County) ("Franklin County Litigation"). S.E.A. further assigns to Titanium all of S.E.A.'s rights and interests in the Franklin County Litigation including without limitation the exclusive right to prosecute, settle or otherwise compromise any or all of the claims stated in relating to or arising out of the Franklin County Litigation (collectively the "Assignments").
 {¶ 18} Paragraph four of the same document further warranted that S.E.A. could properly convey such rights:
S.E.A. warrants that it is the sole and rightful owner of all right, title, and interest in the Assignments and that it has not voluntarily, by operation of law, or otherwise, assigned, transferred, or purported to assign or transfer the Assignments to any person or entity other than Titanium.
 {¶ 19} In contrast, paragraph seven of the May 26, 1999 settlement signed by all parties, provided as follows:
Cincinnati Insurance Company shall retain the right to pursue Gulf Underwriters insurance Company, Media/Professional Insurance, Inc., and/or Wobar, Inc., their shareholders, officers, directors, employees, or agents, predecessors, successors, or assigns, or any parent, subsidiary, and/or related corporations (herein "Gulf/Media") for the bad faith failure of Gulf/Media to provide a defense and coverage to SEA in the Underlying Litigation, to the extent that such right to pursue Gulf/Media for bad faith is vested in Cincinnati Insurance Company by virtue of its payment to Titanium Industries under the SEA excess policy referred to in Paragraph No. 2 above.
 {¶ 20} Paragraph 14 of the May 26 (Exhibit C) settlement agreement described its interaction with the prior May 7, 1999 judgment and appended settlement agreements (Exhibits A and B):
This Settlement Agreement and Release supersedes and replaces Exhibit "A" to the May 7, 1999 Judgment Entry of the Court in the Underlying Litigation, but otherwise does not affect the terms of the May 7, 1999 Judgment Entry in the Underlying Litigation or Exhibit "B" attached to said Judgment Entry. Subject to the preceding, this Settlement Agreement and Release supersedes any earlier or contemporaneous agreements, communications, or discussions between the parties, or any of them, which shall be of no force or effect. This Settlement Agreement and Release shall be binding upon, and shall inure to the benefit of, the parties and their respective assigns, heirs, executors, administrators and successors.
 {¶ 21} Examining the language of these various aspects of the two agreements, we find, as did the trial court, that after conveyance by S.E.A. to Titanium of its rights against Gulf, Cincinnati could acquire no derivative rights in the subsequent agreement, and, moreover, nothing in paragraph seven of the May 26 agreement purports to assign any rights then or previously held by S.E.A. — this section merely asserts that Cincinnati retains any rights already held by Cincinnati by virtue of its payment. "By definition, a subrogee has only those rights its insured has. * * * An insured cannot transfer a right of recovery that the insured does not have." Community Ins. Co. v. OhioDept. of Trans., 137 Ohio App.3d 728, 734, 739 N.E.2d 1166. An insurer as subrogee thus "cannot succeed to or acquire any right or remedy not possessed by its insured." Chemtrol Adhesives,Inc. v. American Manufacturers Mut. Ins. Co. (1989),42 Ohio St.3d 40, 42, 539 N.E.2d 624. As a result, Cincinnati cannot claim to act against Gulf as the assignee of S.E.A., both because nowhere in the May 26 document is there an effective assignment of such a right, and even if there were it would be preceded and thus precluded by the language of Exhibit B to the May 7 consent judgment, which assigned such rights to Titanium.
 {¶ 22} Cincinnati attempted to challenge summary judgment in this matter by pointing to the affidavit of Michael Cyphert, an attorney for Titanium in the Mahoning County lawsuit, in which the affiant avers that, from his personal observation in conducting settlement negotiations, the May 26 agreement was the only global settlement agreement executed by all parties. The trial court properly held that Cyphert's affidavit does not create a factual issue as to the validity and effect of the May 7 judgment entry and that portion of the settlement agreement attached thereto as Exhibit B. The trial court correctly concluded that the intent of the parties would "reside in the language they chose to employ in the agreement," State ex rel.Petro v. R.J. Reynolds Tobacco Co., 104 Ohio St.3d 559, 564,2004-Ohio-7102, 820 N.E.2d 910, and there was no need to resort to extrinsic evidence where the language was clear and unambiguous. Id. Because Exhibit B unambiguously effected a comprehensive assignment of S.E.A.'s rights to Titanium, and the May 26 agreement clearly acknowledged both the effectiveness of Exhibit B and was otherwise consistent with it, the affidavit of Titanium's counsel does not create a material issue of fact as to effect of the agreements.
 {¶ 23} In accordance with the foregoing, we find that the trial court did not err in concluding that there did not remain a material issue of fact as to the prior assignment of S.E.A.'s rights to Titanium and the consequent ineffectiveness of any purported assignment of such to Cincinnati. Cincinnati's first assignment of error is accordingly overruled.
 {¶ 24} Cincinnati's second assignment of error asserts that Cincinnati retained equitable claims against Gulf under equitable subrogation principles to the extent that it had paid obligations owed by Gulf under its purported coverage.
 {¶ 25} This court has stated that an insuror's right to equitable subrogation arises when the insuror both pays the insured for a loss occasioned by a third-party and the loss is covered by the insuror's policy. Motorists Mutual Ins. Co. v.Hall, Franklin App. No. 04AP-1256, 2005-Ohio-3811. Cincinnati admits in this matter that it agreed to the consent judgment in Mahoning County under which S.E.A. confessed judgment in the amount of $8 million, and Cincinnati paid $2 million under its umbrella policy issued to S.E.A. "Under Ohio law, a consent judgment has the same binding effect as one entered by the court after summary adjudication or a full trial." Columbus v. AldenStilson and Assoc., (1993), 90 Ohio App.3d 608, 615,630 N.E.2d 59. The terms of the judgment reflect a liability well in excess of the purported $1 million in primary liability coverage attributable to Gulf and for which Gulf denied coverage. Even if Gulf improperly denied coverage, Cincinnati's payments in the Mahoning County lawsuit do not result from that denial, nor are they made in Gulf's stead. Accepting, arguendo, that Gulf owed coverage under its policy to S.E.A., Cincinnati paid $2 million of the $8 million judgment under its own excess (or "umbrella") policy issued to S.E.A. (in excess of the $1 million due under the Gulf policy) for which it would have been fully liable in any judgment over $3 million regardless of whether Gulf paid under its policy or not. The issue is distinguishable from those cases involving duplicate primary coverage, such as Aetna Cas. Surety Co. v. Buckeye Union Cas., Co. (1952), 157 Ohio St. 385, 47 O.O. 270, 105 N.E.2d 568, relied upon by appellant, which are not comparable to the secondary, or excess, coverage at issue here. Cincinnati has therefore not shown that there remained a material issue of fact on its equitable subrogation claims, and Cincinnati's second assignment of error is accordingly overruled.
 {¶ 26} Cincinnati's third assignment of error asserts that the court erred in granting summary judgment on Cincinnati's claim against Gulf for attorney fees incurred in defending the Titanium lawsuit. As appellees point out, if Cincinnati argues for recovery for S.E.A.'s attorney's fees in that lawsuit, that claim was assigned to Titanium as set forth above. If Cincinnati seeks to recover for its own attorney's fees in the Mahoning County lawsuit, it cannot do so because Cincinnati did not defend that lawsuit in Gulf's place as primary insuror, but to "protect its interest as excess carrier to S.E.A." on appeal after the initial jury verdict. (Cincinnati's appellate brief, at 6.) Cincinnati then approved a consent judgment reflecting liability in excess of both Gulf's purported coverage and Cincinnati's own excess insurance coverage. Because both the initial jury verdict and the ultimate consent judgment were in excess of both Gulf's purported $1 million coverage and Cincinnati's $2 million umbrella coverage, Cincinnati's defense of the Mahoning County lawsuit in all stages in which it participated was in pursuit of its own interest and not attributable to any default by Gulf. Cincinnati's third assignment of error is accordingly overruled.
 {¶ 27} In accordance with the foregoing, Cincinnati's first, second, and third assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas granting summary judgment to appellees is affirmed.
Judgment affirmed.
Petree and French, JJ., concur.